**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
**KRISTIN BENZINGER** on behalf of herself, individually,  :
and on behalf of all others similarly-situated**,**            :
                                                               :
       **Plaintiff,**    :
                                                               :
                                                               :
    -against-      :
                                                               :
                                                               :
**LUKOIL PAN AMERICAS, LLC and LITASCO SA,**  :
                                                               :
                                                               :
     **Defendants.**   :
-----------------------------------------------------------------------X

  **VERIFIED**
  **COMPLAINT**

  *Trial by Jury Demanded*

  **Civil Action No.: 16-cv-8533**

    Plaintiff, KRISTIN BENZINGER ("Plaintiff" or "Ms. Benzinger"), on behalf of herself, individually, and on behalf of all others similarly-situated, (collectively as "FLSA Plaintiffs" and/or "Rule 23 Plaintiffs"), by her attorneys Nesenoff and Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001 alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

    1.  From the moment Ms. Benzinger was hired in April 2013 until she was forced to resign in January 2015, Defendant Lukoil Pan Americas, LLC (hereinafter referred to as "LPA" or "Defendant Lukoil") and Defendant Lukoil Litasco SA (hereinafter referred to as "Litasco" or "Defendant Litasco") engaged in a pattern and practice of withholding earned wages, overtime payments and benefits through means of improperly classifying Plaintiff as an "exempt employee." Plaintiff worked for Defendants as an Executive Assistant from April 2013 until February 2015. By Defendants' own admission, Defendants knowingly and purposefully misclassified Ms. Benzinger, along with every other similarly situated employee, as "exempt" in a willful attempt to skirt

Defendants' duty to pay overtime wages.  In so doing, Defendants maliciously forced Ms. Benzinger to work well over the standard forty (40) hours per-week without properly compensating her at the required higher rate.   When Ms. Benzinger stood up for herself and complained about her misclassification, Defendants openly retaliated against Plaintiff and continued to refuse to properly compensate her or anyone else in the company.

2.      Adding insult to injury, throughout her tenure at LPA, Defendant Lukoil showed an egregious bias against non-Russian employees and willfully discriminated against Ms. Benzinger based on her status as an American citizen.  Indeed, despite her proven qualifications and exemplary job performance, Defendants treated Ms. Benzinger like a pariah, and openly favored Plaintiff's Russian colleagues to Ms. Benzinger's detriment.  Specifically, Defendants, among other things: (i) baselessly compensated Plaintiff significantly less than her Russian colleagues; (ii) unjustifiably withheld bonuses from Plaintiff; (iii) afforded Ms. Benzinger's Russian co-workers more opportunities for professional and educational growth; and (iv) assigned Ms. Benzinger a more demanding work schedule which often required her to work beyond the standard forty-hour work week, which she was (again) not properly compensated for.  As a result of Defendants' deplorable conduct, Ms. Benzinger was forced to resign to escape a rapidly deteriorating work environment which everyday caused her more and more emotional turmoil.

## NATURE OF THE CASE

3.      This is a civil action for damages and equitable relief based upon Defendants' violations of Plaintiff's rights as guaranteed by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160, N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information, N.Y. Lab. Law § 195(3); (iv) the NYLL's

requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, N.Y. Lab. Law § 195(1); (v) the FLSA's anti-retaliation provision, 29 U.S.C. § 215(3); (vi) the NYLL's anti-retaliation provision, N.Y. Lab. Law § 215(1); and (vii) any other claim(s) that can be inferred from the facts set forth herein. Further, this is a civil action for damages and equitable relief based upon Defendants' violation of Plaintiff's civil rights as guaranteed by the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL").

4.     On an individual basis only, Plaintiff brings retaliation claims against Defendants in violation of the FLSA and NYLL, as after Plaintiff complained to Defendants that they were not paying her for all of her overtime and misclassifying Plaintiff as an "exempt" employee, Defendants retaliated against Plaintiff by virtue of removing Plaintiff from projects, precluding Plaintiff from contacting Human Resources, and ultimately constructively discharging Plaintiff from employment. Further, on an individual basis only, Plaintiff brings national origin discrimination claims against Defendants in violation of the NYSHRL and the NYCHRL, as Plaintiff was treated less well than her similarly situated Russian-colleagues, subjected to a hostile work environment, and subjected to a series of adverse employment actions premised upon her national origin which ultimately led to her constructive discharge in February 2015.

5.     Defendants paid and treated all of their Executive Assistants, Financial Assistants, and Receptionists in the same manner, i.e. as "exempt" employees.

6.     Plaintiff brings this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of herself, individually, and on behalf of all other persons similarly-situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

7.     Plaintiff also brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of herself, individually, and on behalf of all other persons similarly-

3

situated during the applicable NYLL limitations period who suffered damages as a result of the Defendants' violations of the NYLL and the supporting New York State Department of Labor regulations.

## THE PARTIES

8.      Plaintiff Kristin Benzinger is a female citizen of the United States who is a resident and domiciliary of Westchester County, New York.   At all times relevant herein, Plaintiff was an "employee" of Defendants and entitled to protection as defined by the FLSA, NYLL, NYCCRR, NYSHRL, and the NYCHRL.

9.      Upon information and belief, at all times herein, Defendant Lukoil was and still is an entity duly organized and existing under the laws of the State of Delaware, with more than 45 employees, and with headquarters located at 1095 Avenue of the Americas 33rd Floor, New York, New York, 10036, who is registered to do business in the State of New York, and who has been engaged in, inter alia, the business of oil trading.

10.     Defendant Lukoil is a subsidiary of Defendant Litasco, a Swiss entity, which in turn is a subsidiary of Lukoil OAO, which is located in Moscow.   Upon information and belief, Defendant Lukoil is not able to make any Human Resource decision without the express permission of Defendant Litasco and its head of Human Resources, Ms. Irina Akinshina.

11.     Upon information and belief, Defendant Litasco, at all times herein, was and still is a Swiss entity and the parent corporation of Defendant Lukoil. Defendant Litasco was at all times a "joint employer" that exercised complete control over Defendant Lukoil's employees. Upon information and belief, Defendant Litasco maintains an office located at 1095 Avenue of the Americas 33rd Floor, New York, New York, 10036.

12.     At all relevant times herein, both Defendants were and are "employers" within the meaning of the FLSA, NYLL, NYCCRR, NYSHRL, and NYCHRL.   Additionally, Defendants' qualifying annual business exceeded and exceeds $500,000, and the businesses are engaged in

4

interstate commerce within the meaning of the FLSA, as Defendants trade and provide oil and petroleum products to clients located throughout all fifty (50) states, as well as internationally, the combination of which subjects Defendants to the FLSA's overtime requirements.

## JURISDICTION

13.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

14.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1), as the actions which give rise to Plaintiff's claims occurred within this judicial district.

## COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff seeks to bring this suit to recover from Defendants unpaid overtime compensation and liquidated damages, pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 216(b), individually, on her own behalf, as well as on behalf of those in the following collective:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed any work for Defendants as executive assistants, financial assistants, and/or receptionists, who give consent to file a claim to recover damages for overtime compensation that is legally due to them for the time worked in excess of forty hours per week ("FLSA Plaintiffs").

16.     Defendants treated Plaintiff and all FLSA Plaintiffs similarly in that Plaintiff and all FLSA Plaintiffs: (1) performed similar tasks, as described in the "Factual Background" section below; (2) were subject to the same laws and regulations; (3) were paid in the same or similar manner; (4) were required to work in excess of forty hours in a workweek; and (5) were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty.

17.     At all relevant times, Defendants are and have been aware of the requirement to pay Plaintiff and all FLSA Plaintiffs at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty, yet they purposefully and willfully chose and choose not to do so.

18.     Thus, all FLSA Plaintiffs are victims of Defendants' pervasive practice of willfully refusing to pay their employees overtime compensation for all hours worked per workweek above forty in violation of the FLSA.

## RULE 23 CLASS ALLEGATIONS

19.     In addition, Plaintiff seeks to maintain this action as a class action pursuant to FRCP 23(b)(3), individually, on her own behalf, as well as on behalf of those who are similarly situated who, during the applicable limitations period, Defendants subjected to violations of the NYLL and the NYCCRR.

20.     Under FRCP 23(b)(3), Plaintiff must plead that:

     i.   The class is so numerous that joinder is impracticable;

     ii.  There are questions of law or fact common to the class that predominate over any individual questions of law or fact;

     iii. Claims or defenses of the representative are typical of the class;

     iv.  The representative will fairly and adequately protect the class; and

     v.   A class action is superior to other methods of adjudication.

21.     Plaintiff seeks certification of the following FRCP 23 class:

Current and former employees who performed any work for Defendants as Executive Assistants, Financial Assistants, and/or Receptionists during the statutory period, within the State of New York, who: (1) did not receive compensation from Defendants at the legally required overtime rate of pay for each hour worked over forty hours; (2) were misclassified as "exempt employees;" (3) were not provided with accurate wage statements on each payday pursuant to NYLL §195(3); and/or (4) were not provided with a wage notice at hire containing

specific categories of accurate information as required by NYLL §195(1)("Rule 23 Plaintiffs").

Numerosity

22.     During the previous six years, Defendants have, in total, employed at least forty employees that are putative members of this class.

Common Questions of Law and/or Fact

23.     There are questions of law and fact common to each and every Rule 23 Plaintiff that predominate over any questions solely affecting individual members of the FRCP 23 class, including but not limited to the following: (1) the duties that Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether Defendants misclassified Rule 23 Plaintiffs as "exempt" employees; (4) whether Rule 23 Plaintiffs worked and work in excess of forty hours per week; (5) whether Defendants failed and fail to pay Rule 23 Plaintiffs proper overtime compensation for all hours worked in excess of forty hours in a week; (6) whether Defendants furnished and furnish Rule 23 Plaintiffs with accurate wage statements on each payday containing the information that NYLL § 195(3) requires; (7) whether Defendants furnished and furnish Rule 23 Plaintiffs with an accurate wage notice at hire containing specific categories of accurate information as required by NYLL § 195(1); (8) whether Defendants kept and maintained accurate records of hours that the Rule 23 Plaintiffs worked; (9) whether Defendants kept and maintained records with respect to the compensation that they paid to the Rule 23 Plaintiffs for each hour worked; (10) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (11) whether the Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and supporting regulations; and (12) if so, what constitutes the proper measure of damages.

Typicality of Claims and/or Defenses

24.     As described in the "Factual Background" section below, Defendants employed and/or employ Plaintiff and Rule 23 Plaintiffs within the meaning of the NYLL.  Plaintiff's claims are typical

of the claims of the Rule 23 Plaintiffs whom she seeks to represent, as the Rule 23 Plaintiffs work and/or have worked for Defendants as executive assistants, financial assistants, and/or receptionists during the statutory period within the State of New York, and Defendants purposefully misclassified them as "exempt" employees and failed to pay them overtime pay for all hours worked in a week over forty, provide them with proper wage statements on each payday or a wage notice at hire.

25.     Plaintiff and the Rule 23 Plaintiffs enjoy the same statutory rights under the NYLL to receive overtime wages for all hours worked over forty hours and to be furnished with accurate wage statements on each payday and a wage notice at hire.  Plaintiff and the Rule 23 Plaintiffs have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL and supporting regulations, namely lack of compensation or under-compensation due to Defendants' common policies, practices, and patterns of conduct.  Thus, Plaintiff's claims and/or Defendants' defenses to those claims are typical of the Rule 23 Plaintiffs' claims and/or Defendants' defenses to those claims.

<u>Adequacy</u>

26.     Plaintiff, as described below, worked the same or similar hours as the Rule 23 Plaintiffs throughout her employment with Defendants.  Defendants purposefully misclassified Plaintiff and did not pay Plaintiff overtime for all hours worked over forty hours in a week and did not furnish Plaintiff with accurate wage statements on each payday or an accurate wage notice at hire, which is substantially similar to how Defendants paid and treated the Rule 23 Plaintiffs.  Plaintiff fully anticipates providing discovery responses and testifying under oath as to all of the matters raised in this Complaint and that will be raised in Defendants' Answer. Thus, Plaintiff would properly and adequately represent the current and former employees whom Defendants have subjected to the treatment alleged herein.

Superiority

27.     Plaintiff has no, or very few, material facts relating to the Rule 23 Plaintiffs' claims that are atypical of those of the putative class.  Indeed, at all relevant times herein, Defendants treated Plaintiff identically, or at the very least, substantially similarly, to the Rule 23 Plaintiffs.

28.     Any lawsuit brought by an employee of Defendants would be identical to a suit brought by any other employee for the same violations.  Thus, separate litigation would risk inconsistent results.

29.     Accordingly, this method of protecting Rule 23 Plaintiffs' rights is superior to any other method, and this action is properly maintainable as a class action under FRCP 23(b)(3).

30.     Additionally, Plaintiff's counsel has experience in this field of law.

**FACTUAL BACKGROUND**

**Failure to Pay Overtime**

*Plaintiff is Hired by Defendants and Fraudulently Classified as an "Exempt" Employee*

31.     On or about March 22, 2013, Plaintiff accepted a position at Defendant Lukoil as an Executive Assistant.  Plaintiff thereafter commenced employment on April 30, 2013.

32.     Despite the fact that under the law she was clearly an hourly employee, Defendants insisted on classifying her, along with every other employee, as "exempt" under the applicable state and federal laws.

33.     Immediately, Plaintiff was told she had set hours and exercised no independent judgment or control over her substantive or procedural work obligations.

34.     By improperly classifying Plaintiff as an "exempt" employee, Defendants avoided their obligation to properly compensate Plaintiff and her similarly situated colleagues for any overtime hours performed.

9

*Plaintiff is Forced to Perform Extensive Overtime Work with No Compensation*

35.     Plaintiff was forced to perform extensive amounts of overtime, for which she was never compensated.

36.     Specifically, Plaintiff worked for Defendants in New York from April 2013 to February 2015 as an executive assistant, and in that capacity was responsible for, among other things: answering and directing phone calls, managing her supervisor's calendar and the office calendar, making travel arrangements, filing and organizing documents, maintaining expense reports, reconciling credit card transactions, and general office troubleshooting.

37.     Moreover, from time to time, Plaintiff was forced to work as a receptionist for Defendants.

38.     Throughout her employment, Defendants required Plaintiff to work, and Plaintiff did work, five days per week, from at least 8:00 a.m. until at least 6:00 p.m. on weekdays, with an unscheduled thirty-minute break each day only when the schedule allowed.

39.     By approximation, throughout her employment, Defendants required Plaintiff to work, and Plaintiff did work, at least fifty-five hours per week, and oftentimes more.

40.     Defendant also required Plaintiff, much to Plaintiff's dismay, to remain "on call" and available to send and/or respond to telephone calls, emails, and text messages at all times.

41.     For each week that Plaintiff worked, Defendants paid Plaintiff a flat salary of $1,770.83 per week, which was meant to cover only the first forty hours the Plaintiff worked each week, and which computes to an hourly rate of $44.27 per hour.

42.     Defendants treated Plaintiff and all FLSA Plaintiffs in the manner described above so as to maximize their profits while minimizing their labor costs.

43.     Every hour that Plaintiff and FLSA Plaintiffs worked was for Defendants' benefit.

**National Origin Discrimination**

*Defendants Misrepresent the Circumstances Surrounding Plaintiff's Hiring and the Duties She is Required to Perform*

44.     Upon her hire, Defendants advised Plaintiff that she would replace the current Executive assistant, Inga Bogutska ("Inga"), because Inga made "far too many" mistakes and was not competent for the role.

45.     Defendant Lukoil further advised Plaintiff that Inga had been "happily" reassigned to a receptionist role.

46.     In reality, however, Inga viewed her change in position as a demotion and was very unhappy about it.

47.     Plaintiff was hired to work eight hours a day, and was specifically assured that she would not have to work outside of her scheduled hours.  Despite Defendants' false assurances, Plaintiff routinely worked in excess of the promised eight hours a day, and accrued significant overtime hours weekly.

48.     Plaintiff was expected to oversee and manage Inga's work performance because of Inga's reputation as being incompetent.  In addition, Ms. Benzinger learned that Inga required a lot of oversight because she spoke native Russian and only spoke English as a second language. Moreover, Inga's written English was incredibly poor.

49.     Ms. Benzinger also learned that she was expected to "supervise and manage" Inga.

50.     Given Inga's lack of language skills, Plaintiff was surprised that Inga had been hired to perform the Executive Assistant role, and even more surprised that she had been allowed to remain in the role for a significant period of time.

51.     Plaintiff had to regularly assist Inga with receptionist duties, which created significant additional work for Plaintiff.

*Defendants Purposefully Pay Russian Employees More than Non-Russian Employees*

52.     As an Executive Assistant, Ms. Benzinger was given access to certain documents to copy and/or perform data entry or file.

53.     While performing such duties, Ms. Benzinger reviewed some of the aforementioned documents and quickly discovered Defendants' blatant preference for her Russian colleagues.

54.     Indeed, it was widely understood amongst Defendants' employees that Russian employees were favored amongst non-Russian employees.

55.     Plaintiff also learned of other troubling complaints of national origin discrimination when she saw emails from complaining non-Russian employees.

56.     Upon information and belief, employees of Russian descent were, among other things: (i) compensated more; (ii) were given more professional development opportunities; (iii) were promoted more quickly; (iv) were not required to work outside of their assigned hours as much; (v) were given more travel opportunities; (vi) were given more and better training; (vii) were given larger bonuses; and (viii) were provided with educational benefits that non-Russian employees were not offered.

57.     By way of example, when Russian colleagues would visit Plaintiff's work site, upon information and belief, Defendants gave such employees generous and exorbitant gifts such as tickets to Broadway shows, business lunches, and the latest in computer gadgetry.

58.     Moreover, by way of example, Defendants held a clear preference for Russian employees. Indeed, upon information and belief, when a Russian employee was in need of a job or placement at Plaintiff's work location, Defendants made every effort to find such placement and, upon information and belief, sacrificed the positions of non-Russian employees to secure the Russian employee's job even when the employee would require extensive visa application assistance.

59.     Defendants' clear bias for Russian employees was most prevalent in the vast disparity between Plaintiff's wages and those of her Russian counterparts, including and especially Inga.

60.     For example, Plaintiff learned that Inga was compensated far more than she, not only when Inga had been an Executive Assistant in 2011 and 2012, but even after Inga was demoted to the role of receptionist and Plaintiff was charged with managing and supervising her.

61.     Specifically, although Inga earned a lesser salary than Plaintiff, Defendants afforded Inga higher bonuses and a better portion of Defendants' profit sharing plan based upon her Russian descent. Indeed, although Plaintiff was allegedly entitled to a profit sharing bonus after her first year of employment, Ms. Benzinger was told that she was barred from profit sharing after her first year. Upon information and belief, other non-Russian employees were similarly barred.

62.     In comparison, upon information and belief, Inga was permitted to participate in Defendants' profit sharing plan and was awarded a high bonus despite her poor performance which put her compensation much higher than Plaintiff's rate.

63.     Further, upon information and belief, Plaintiff was consistently denied raises and meaningful bonuses, while Inga continued to be compensated at a higher rate than Plaintiff.

64.     Ms. Benzinger was shocked and appalled when she learned that Inga was paid significantly more than she was and consistently given additional compensation while Plaintiff was denied same rewards for performing harder tasks at a better quality than Inga had.

65.     By way of example, in or around July 2014, Ms. Benzinger requested a $5,000.00 raise in her annual salary. Upon information and belief, Defendants were authorized to grant Ms. Benzinger such a bonus as recognition for all of the hard work she had performed and in recognition of her positive performance review.

66.     Appallingly, however, Defendants unjustifiably denied Plaintiff any raise at all, despite, upon information and belief, granting Inga and Plaintiff's fellow Russian co-workers significant raises and bonuses.

67.     Upon information and belief, Plaintiff was consistently denied raises and meaningful bonuses, while Inga continued to be compensated more highly than she was. Upon information and

belief, similarly situated non-Russian employees were also unfairly denied bonuses while Russian employees were highly compensated. Upon information and belief, Defendants held non-Russian employees to a higher standard when deciding whether or not to issue bonuses, which almost always resulted in non-Russian employees receiving menial, if any bonus or raise.

68.     Plaintiff was shocked to learn that all substantive Human Resource decisions at Defendant Lukoil required the express consent of Defendant LPA and Litasco HR Leadership.

**Retaliation Background Facts**

*Plaintiff Confronts Defendant Lukoil*

69.     In or around October 2014, Plaintiff learned that, once again, she would be denied a raise, and that Inga had been rewarded with significantly more compensation.  Plaintiff repeatedly objected to the blatant National Origin Discrimination.

70.     When Plaintiff objected to the blatant National Origin discrimination to Defendant Lukoil's Human Resources ("HR") Consultant Jennifer Diehl ("Ms. Diehl") in front of Managing Director Simon Fenner ("Managing Director Fenner"), Ms. Diehl replied sarcastically and exasperatedly: "Are you surprised [that Inga got additional compensation]"?

71.     Moreover, Plaintiff additionally complained of her inaccurate "exempt" status and stated that Defendants' compensation decisions did not make sense.

72.     Specifically, Plaintiff complained about the blatant pay disparity between herself and her Russian colleagues. Plaintiff told Managing Director Fenner that she had learned Defendant Lukoil had determined that she performed 70% of the work in the "administrative pool" while Inga had performed just 25% of the work.

73.     Plaintiff inquired as to how Inga could possibly be paid more.

74.     Furthermore, Plaintiff confronted Managing Director Fenner and Ms. Diehl about her "exempt" status, and expressly explained that she should not be an "exempt" employee and that she was owed a significant amount in unpaid overtime.

75.     Managing Director Fenner failed to provide Plaintiff with any answer to her complaints and instead lashed out at Plaintiff and demanded that Ms. Benzinger tell him how she had acquired that information, even though he knew she was tasked with monitoring her supervisor's email.

76.      The meeting ended with no further conversation and no resolution to Plaintiff's valid complaints.

77.     After the aforementioned October 2014 meeting, Plaintiff continued to question her "exempt" classification and attempted to earn fair compensation for her work as a full-time employee. Indeed, after speaking with Managing Director Fenner, Plaintiff submitted a new proposed job description which included higher responsibilities to justify her "exempt" status.

78.     Plaintiff was hopeful, after speaking with Managing Director Fenner that Defendants would adjust her position to better comply with her classification under the law. Plaintiff's hopes were misplaced, however, as Defendants did not adjust her job description and continued to wrongfully classify Plaintiff as an "exempt" employee.

79.     Indeed, instead of properly adjusting Plaintiff's position and classification, Defendants continued to deny Plaintiff her fair compensation and attempted to dissuade Plaintiff from pursuing the issue further.

80.     Plaintiff quickly realized that she would consistently be denied equal compensation and fair treatment as a full-time employee because she was not Russian.

*Defendants Retaliate Against Plaintiff for her Opposition to their Unlawful Practices*

81.     Following the October 2014 meeting, Plaintiff noticed a significant shift in her work environment. Specifically, Plaintiff was immediately 'iced out' in the office.

15

82.     Indeed, following her complaints, Defendants singled out Plaintiff and systematically targeted her in retaliation.

83.     For example, almost immediately after she complained about discrimination and Defendants' compensation practices, Defendants removed Plaintiff from her current project working with HR where she assisted with document coordination for the many Visa applications LPA sought for Defendants' Russian and European employees, and reassigned her to a new project for which she had to start fresh.

84.     Upon information and belief, Defendants purposefully removed Plaintiff from her prior project because they did not want her to work with HR and learn even more about their unlawful employment and compensation practices.

85.     Moreover, Defendants removed Plaintiff from her office and placed her closer to the receptionist desk. At such time, Defendants mandated that Plaintiff take on more tasks and help manage the receptionist desk and reception area.

86.     Defendants continued to refuse to grant Plaintiff a fair bonus or fix her classification, despite Plaintiff's continued complaints.

87.      On or about January 20, 2015, Plaintiff was forced to quit due to Defendants' continued refusal to properly classify her employment and compensate her for her overtime hours.

88.     Accordingly, Plaintiff was constructively discharged.

### Defendants Admit Defeat and Try to Cover Their Tracks

89.     At the time of Plaintiff's resignation, Plaintiff again brought up her unpaid overtime hours to Managing Director Fenner. Curiously, Managing Director Fenner also requested that Defendants' in-house counsel attend the meeting but Plaintiff objected as she did not have legal counsel of her own.

90.     During this meeting, Defendants conceded that Plaintiff had purposefully been misclassified and was owed significant compensation for overtime hours worked during her tenure.

16

91.     To that end, Defendants presented Ms. Benzinger with a spreadsheet of her hours and conceded that, by Defendants' own calculation, Plaintiff was owed approximately 305 hours of overtime pay, approximately $18,330.00.

92.     Upon information and belief, however, the amount of uncompensated overtime Plaintiff is entitled to exceed 470 hours.

93.     Despite admitting to wrongdoing, Defendants continued to levy Plaintiff's compensation against her and refused to pay her the 305 hours of overtime unless she signed a release. At such time, knowing that Defendants were (again) withholding rightfully earned compensation from her and seeing no other form of escape, Plaintiff was forced to resign.

94.     Curiously, since Plaintiff's resignation, Defendants have, upon information and belief, began to properly classify employees as either "exempt" or "non-exempt." Upon information and belief, despite now properly classifying employees, Defendants have not re-paid unpaid overtime for the years Defendants purposefully misclassified all employees as "exempt" to cut labor costs.

## CLAIMS FOR RELIEF
## AS AND FOR A FIRST CAUSE OF ACTION
### (Unpaid Overtime under the FLSA)

95.     Plaintiff and FLSA Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96.     29 U.S.C. § 206(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for all hours worked exceeding forty in a workweek.

97.     As described above, Defendants are employers within the meaning of the FLSA while Plaintiff and FLSA Plaintiffs are employees within the meaning of the FLSA.

98.     Plaintiff and FLSA Plaintiffs worked in excess of forty hours per week, yet Defendants failed to compensate Plaintiff and FLSA Plaintiffs in accordance with the FLSA's overtime provisions.

99.     Defendants willfully violated the FLSA.

100.    Plaintiff and FLSA Plaintiffs are entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

101.    Plaintiff and FLSA Plaintiffs are also entitled to liquidated damages and attorneys' fees for Defendants' violation of the FLSA's overtime provisions.

## AS AND FOR THE SECOND CAUSE OF ACTION
*(Unpaid Overtime under the NYLL and the NYCCRR)*

102.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

103.    NYLL §160 and 12 NYCCRR §142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty in a workweek.

104.    As described above, Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

105.    As also described above, Plaintiff and Rule 23 Plaintiffs worked in excess of forty hours in a workweek, yet Defendants failed to compensate them in accordance with the NYLL's and the NYCCRR's overtime provisions.

106.    Plaintiff and Rule 23 Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times their respective regular rates of pay.

107.    Plaintiff and Rule 23 Plaintiffs are also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and NYCCRR's overtime provisions.

## AS AND FOR THE THIRD CAUSE OF ACTION
*(Failure to Furnish Proper Wage Statements in Violation of the NYLL)*

108.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109.    N.Y. Lab. Law §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

110.    As described above, the Defendants, on each payday, failed to furnish Plaintiff and Rule 23 Plaintiffs with accurate wage statements containing the criteria required under the NYLL.

111.    Prior to February 27, 2015, pursuant to N.Y. Lab. Law §198(1-d), the Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $100 for each workweek after the violation occurred, up to a statutory cap of $2,500.

112.    On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.

## AS AND FOR THE FOURTH CAUSE OF ACTION
*(Failure to Furnish Proper Wage Notices in Violation of the NYLL)*

113.    Plaintiff and Rule 23 Plaintiffs repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114.    NYLL §195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

115.    Defendants are employers within the meaning of the NYLL and the NYCCRR, while Plaintiff and Rule 23 Plaintiffs are employees within the meaning of the NYLL and the NYCCRR.

116. As described above, the Defendants failed to furnish Plaintiff and Rule 23 Plaintiffs with accurate wage notices at hire, or at any time thereafter, containing all of the criteria required under the NYLL.

117. Prior to February 27, 2015, pursuant to NYLL §198(1-b), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $50 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.

118. On or after February 27, 2015, pursuant to NYLL §198(1-b), Defendants are liable to Plaintiff and Rule 23 Plaintiffs in the amount of $50.00 for each workday after the violations initially occurred, up to a statutory cap of $5,000.

## AS AND FOR THE FIFTH CAUSE OF ACTION
*(Violation of Anti-Retaliation Provisions of the FLSA, 29 U.S.C. §215(3))*

119. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

120. As described above, after Plaintiff lodged a good faith complaint with Defendants about their failure to pay Plaintiff proper overtime, Defendants retaliated against Plaintiff by: (i) removing Plaintiff from projects; (ii) moving Plaintiff's office and forcing Plaintiff to perform additional receptionist tasks; (iii) precluding Plaintiff from working with Human Resources; and (iv) constructively discharging Plaintiff.

121. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

122. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

123.    Additionally, Plaintiff is entitled to liquidated damages, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the FLSA's anti-retaliation provision.

## AS AND FOR THE SIXTH CAUSE OF ACTION
*(Retaliation in Violation of the NYLL §215(1))*

124.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

125.    As described above, after Plaintiff lodged a good faith complaint with Defendants about their violations of the NYLL, Defendants retaliated against Plaintiff by: (i) removing Plaintiff from projects; (ii) moving Plaintiff's office and forcing Plaintiff to perform additional receptionist tasks; (iii) precluding Plaintiff from working with Human Resources; and (iv) constructively discharging Plaintiff.

126.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which she is entitled to an award of monetary damages and other relief.

127.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

128.    Additionally, Plaintiff is entitled to liquidated damages, as well as punitive damages for Defendants' malicious, willful, and wanton violations of the NYLL's anti-retaliation provision.

129.    Pursuant to NYLL §215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff is filing a Notice of Claim with the Office of the New York State Attorney General, thereby advising the aforementioned of his claim for retaliation under Section 215 of the NYLL.

## AS AND FOR THE SEVENTH CAUSE OF ACTION
*(National Origin Discrimination in Violation of the NYSHRL)*

130.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

131.    Plaintiff is a female of American origin and is therefore a member of a protected class under the NYSHRL.

132.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held at Defendant Lukoil.

133.    As set forth in detail above and herein, Plaintiff was illegally discriminated against because of her national origin when Defendants regularly made employment decisions adverse to Plaintiff because of her national origin.

134.    Defendants subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions that culminated in Plaintiff's constructive resignation, because of her national origin in violation of Plaintiff's statutory and constitutional rights.

135.    The discrimination Plaintiff suffered while employed by Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

136.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, as set forth in detail here and above.

137.    By reason of Defendants repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

138.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her

ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

139.    Plaintiff was discriminated against and subjected to national origin discrimination by virtue of having been treated less well than her similarly situated colleagues outside her protected class and having been subjected to a hostile work environment by Defendants based on her national origin in violation of the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.).  As a result of Defendants' violations, Plaintiff has been damaged in the sum of no less than $1,500,000.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
*(National Origin Discrimination in Violation of the NYCHRL)*

140.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

141.    Plaintiff is a female of American origin and is therefore a member of a protected class under the NYCHRL.

142.    Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held at Defendant Lukoil.

143.    As set forth in detail above and herein, Plaintiff was illegally discriminated against because of her national origin when Defendants regularly made employment decisions adverse to Plaintiff because of her national origin.

144.    Defendants subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions that culminated in Plaintiff's constructive resignation, because of her national origin in violation of Plaintiff's statutory and constitutional rights.

145.    The discrimination Plaintiff suffered while employed by Defendants was severe and pervasive, unwelcome by Plaintiff, and would be offensive to a reasonable person.

146.    The discrimination that Plaintiff suffered while employed by Defendants severely affected the terms and conditions of her employment, as set forth in detail here and above.

147.    By reason of Defendants repeated violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

148.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

149.    Plaintiff was discriminated against and subjected to national origin discrimination by virtue of having been treated less well than her similarly situated colleagues outside her protected class and having been subjected to a hostile work environment by Defendants based on her national origin in violation of the New York City Human Rights Law.  As a result of Defendants' violations, Plaintiff has been damaged in the sum of no less than $1,500,000.

## AS AND FOR THE NINTH CAUSE OF ACTION
*(Retaliation in Violation of the NYSHRL)*

150.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

151.    As set forth in detail above, Defendants subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions because of national origin in violation of Plaintiff's statutory and constitutional rights.

152.    Plaintiff complained to Defendants who acknowledged a pattern of national origin discrimination and who, upon information and belief, regularly witnessed the severe and pervasive national origin discrimination and hostile work environment Plaintiff was subjected to during her employment.

153.    Plaintiff's complaints were repeatedly ignored and discouraged by Defendants in accordance with Defendants' policy, practice, and/or custom of discrimination and retaliation.

154.    Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of national origin discrimination and a hostile work environment.

155.    The retaliation substantially interfered with Plaintiff's employment and created an intimidating, offensive, and hostile work environment.

156.    Because she protested Defendants' unlawful behavior, Plaintiff was ultimately forced to resign, which resignation constituted a constructive termination.

157.    Defendants knew or should have known about the retaliation and the affect it had on Plaintiff's employment but failed to take any action to stop the retaliatory conduct, and in fact allowed Plaintiff to suffer a constructive termination.

158.    As a direct and proximate result of said unlawful employment practices and   disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to: wages, social security, and other benefits due her.

159.    Additionally, Plaintiff has suffered the indignity of discrimination and retaliation, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

160.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

161.    Based on the foregoing, Plaintiff was retaliated against which culminated in Plaintiff's retaliatory constructive termination by Defendants in violation of the New York State Human Rights

Law. As a result of Defendants' retaliatory actions, Plaintiff has been damaged in the sum of no less than $1,500,000.

## AS AND FOR THE TENTH CAUSE OF ACTION
*(Retaliation in Violation of the NYCHRL)*

162.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

163.    As set forth in detail above, Defendants subjected Plaintiff to a hostile work environment, disparate treatment, and an atmosphere of adverse employment actions and decisions because of national origin in violation of Plaintiff's statutory and constitutional rights.

164.    Plaintiff complained to Defendants who acknowledged a pattern of national origin discrimination and who, upon information and belief, regularly witnessed the severe and pervasive national origin discrimination and hostile work environment Plaintiff was subjected to during her employment.

165.    Plaintiff's complaints were repeatedly ignored and discouraged by Defendants in accordance with Defendants' policy, practice, and/or custom of discrimination and retaliation.

166.    Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of national origin discrimination and a hostile work environment.

167.    The retaliation substantially interfered with Plaintiff's employment and created an intimidating, offensive, and hostile work environment.

168.    Because she protested Defendants' unlawful behavior, Plaintiff was ultimately forced to resign, which resignation constituted a constructive termination.

169.    Defendants knew or should have known about the retaliation and the affect it had on Plaintiff's employment but failed to take any action to stop the retaliatory conduct, and in fact allowed Plaintiff to suffer a constructive termination.

170.    As a direct and proximate result of said unlawful employment practices and   disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to: wages, social security, and other benefits due her.

171.    Additionally, Plaintiff has suffered the indignity of discrimination and retaliation, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

172.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

173.    Based on the foregoing, Plaintiff was retaliated against which culminated in Plaintiff's retaliatory constructive termination by Defendants in violation of the New York City Human Rights Law. As a result of Defendants' retaliatory actions, Plaintiff has been damaged in the sum of no less than $1,500,000.

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs demand judgment against Defendants as follows:

a.    A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws;

b.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.  An order restraining Defendants from any retaliation against Plaintiff, FLSA Plaintiffs, and/or Rule 23 Plaintiffs for participation in any form in this litigation;

d.  Designation of this action as an FLSA collective action on behalf of Plaintiff and FLSA Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

e.  Certification of the claims brought in this case under the NYLL and NYCCRR as a class action pursuant to FRCP 23;

f.  All damages that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs would have received but for the Defendants' unlawful payment practices;

g.  All compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful retaliatory and discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

h.  Punitive damages, as provided by law, in connection with Plaintiff's discrimination and retaliation claims;

i.  Liquidated damages and any other statutory penalties as recoverable under the FLSA, NYLL, NYSHRL, and NYCHRL;

j.   Awarding Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs, and an award of a service payment to Plaintiff;

k.   Designation of Plaintiff and her counsel as class/collective action representatives under the FRCP and the FLSA;

l.   Pre-judgment and post-judgment interest, as provided by law; and

m.   Granting Plaintiff, FLSA Plaintiffs, and Rule 23 Plaintiffs other and further relief as this Court finds necessary and proper.

**Dated: New York, New York**
        **November 2, 2016**

                            **NESENOFF & MILTENBERG, LLP**
                            ***Attorneys for Plaintiff***


                            **By:_____ /S/_____**
                                **Megan S. Goddard, Esq.**
                                **Gabrielle Vinci, Esq.**
                                **363 Seventh Avenue, Fifth Floor**
                                **New York, New York 10001**
                                **(212) 736-4500**

## **VERIFICATION**

**STATE OF NEW YORK**                    )
                                         ) **ss.:**
**COUNTY OF** New York                   )

**KRISTIN BENZINGER,** being duly sworn, deposes and says:

I am the Plaintiff named in this matter. I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except as to matters alleged upon information and belief and as to those matters, I believe them to be true.

**KRISTIN BENZINGER**

Sworn to and subscribed before me
this ___ day of July ___, 2016.

**NOTARY PUBLIC**

JEFFEREY J ODGIS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OD6334727
Qualified in New York County
My Commission Expires December 21, 2019