## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KRISTIN BENZINGER, on behalf of herself, individually, and on behalf of all others similarly-situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | **CIVIL ACTION NO 16-8533** |
| | : | |
| v. | : | **NOTICE OF MOTION** |
| | : | |
| LUKOIL PAN AMERICAS, LLC and LITASCO SA, | : | |
| | : | |
| Defendants. | : | |

## <u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

Obermayer Rebmann Maxwell & Hippel LLP

Joseph J. Centeno, Esquire
Charlene A. Barker, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA  19102
215.665.3063 (phone)
215.665.3165 (fax)
*Counsel for Defendants*

Dated:  January 27, 2017

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     STATEMENT OF ALLEGED FACTS ........................................................ 3

        A.   Allegations Related to Plaintiff's Individual FLSA and NYLL Overtime
             Compensation Claims ................................................................ 3

        B.   The Collective Action Allegations ................................................ 4

        C.   Allegations Related to Plaintiff's National Origin Discrimination Claim ........ 4

III.    LEGAL ANALYSIS ............................................................................ 5

        A.   Legal  Standard For Dismissal Pursuant to Rule 12(b)(2) ........................ 5

        B.   Legal Standard For Dismissal Pursuant To Rule 12(b)(6) ....................... 6

        C.   Plaintiff Fails To Make A Prima Facie Showing of Personal Jurisdiction Over
             LITASCO ............................................................................... 7

             1.   LITASCO Is Not "Doing Business" in New York, Therefore There Is No Basis to
                  Exercise General Personal Jurisdiction Over LITASCO ........................ 8

                  i.    LITASCO's Ownership Of LPA Does Not Warrant The Exercise Of
                        Personal Jurisdiction Over LITASCO ................................... 12

                  ii.   The Mere Department Test Fails ........................................ 12

                  iii.  The Agency Test Fails .................................................. 14

                  iv.   Plaintiff's Joint Employer Theory Is Not Relevant To The Court's
                        Determination of Personal Jurisdiction ............................... 14

             2.   There is No Basis To Exercise Specific Personal Jurisdiction Over LITASCO.... 15

        D.   Any Exercise of Jurisdiction Over LITASCO Would Violate Due Process. ........... 16

        E.   Plaintiff Failed to Plausibly Allege That LITASCO is a Joint Employer ............... 17

        F.   Plaintiff's Allegations Do Not Establish A Plausible Claim Under The FLSA And
             The NYLL ............................................................................ 20

        G.   Plaintiff's Allegations Do Not Establish A Plausible Claim Of National Origin
             Discrimination Under The New York State Human Rights Law ...................... 23

IV.     CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987) ...................................... 17

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 7

Azeez v. Ramaiah, No. 14-5623, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y. Apr. 9, 2015)... 22, 23

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194 (2d Cir. 1990) .................................. 5

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez , 305 F.3d 120 (2d Cir. 2002) ........... 7

Barella v. Vill. of Freeport, 16 F. Supp. 3d 144 (E.D.N.Y. 2014) ................................................ 24

Barfield v. N.Y. City Health & Hosp. Corp. , 537 F.3d 132 (2d Cir. 2008) ................................ 18

Beeney v. InSightec, Inc., No. 13-8022, 2014 U.S. Dist. LEXIS 99616 (S.D.N.Y. July 7, 2014)  6

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)  .............. 7

Berlyavsky v. N.Y. City Dep't of Envtl. Prot., No. 14-03217, 2015 U.S. Dist. LEXIS 133647 (E.D.N.Y. Aug. 28, 2015) ...................................................................................................... 24, 25

Bradley v. Staubach, No. 03 Civ. 4160, 2004 U.S. Dist. LEXIS 6584 (S.D.N.Y. Apr. 12, 2004)  6

Bresciani v. Leela Mumbai-A-Kempinski Hotel, 311 F. Supp. 2d 440 (S.D.N.Y. 2004) ....... 9, 10

Bristol-Myers Squibb Co. v. Matrix Labs., Ltd., 964 F. Supp. 2d 287, 294 (S.D.N.Y. 2013) . . . .9

Cannon v. Douglas Elliman, L.L.C., No. 06-7092, 2007 U.S. Dist. LEXIS 91139 (S.D.N.Y. Dec. 10, 2007) ..................................................................................................................... 18, 20

Daimler AG v. Bauman, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ............................................ 8

Decraene v. Neuhaus (U.S.A.), Inc., No. 04-2876, 2005 U.S. Dist. LEXIS 10836 (S.D.N.Y. June 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...... ...      7, 8, 9

DeJesus v. HF Mgmt. Servs., 726 F.3d 85 (2d Cir. 2013) .................................................... 21, 22

DeSilva v. N. Shore-Long Island Jewish Health Sys., 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ... 21

DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81 (2d Cir. 2001) .................................................... 5

E.I. du Pont de Nemours & Co. v. Kolon Indus., No. 12-8435, 2013 U.S. Dist. LEXIS 123949 (S.D.N.Y. Aug. 29, 2013) .............................................................................................. 14

Frasier v. Gen. Elec. Co., 930 F.2d 1004 (2d Cir. 1991) .............................................................. 6

Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533 (1967) ...................................................... 14

Funk KG v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722 (S.D.N.Y. 2001) ........................................................................................................................ 12

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) ....................................................................................................................... 8

Hanson v. Denckla, 357 U.S. 235, 2 L. Ed. 1283, 78 S. Ct. 1228 (1958) ........................... 16

H. Heller & Co. v. Novacor Chems., Ltd. , 726 F. Supp. 49 (S.D.N.Y. 1988) ........................... 12

Harris v NYU Langone Med. Ctr., No. 12-0454, 2013 U.S. Dist LEXIS 139622 (S.D.N.Y. Sep. 27, 2013) ...................................................................................................................19

Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010) ................................................... 7

Herman v. RSR Sec. Servs., 172 F.3d 132 (2d Cir. 1999) ..................................... 18

Hickton v. Enter. Rent-A-Car Co., 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010) ...................... 6, 14

Hinckley v. Seagate Hosp. Grp., L.L.P., No. 16-6118, 2016 U.S. Dist. LEXIS 152799 (W.D.N.Y. Nov. 2, 2016) ....................................................................................... 22, 23

Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55 (2d Cir. 1985) ..................... 8

In re Ski Train Fire in Kaprun, 230 F. Supp. 2d 403 (S.D.N.Y. 2002) ........................ 13

Int'l Shoe Co. v. Wash., 326 U.S. 310 (1945) ......................................................... 16

In re Terrorist Attacks on September 11, 2001 (Asat Tr. Reg.), 714 F.3d 659 (2d Cir. 2013) ...... 5

Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722 (S.D.N.Y. 2001) ............................................................................................. 9, 12, 13

Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998) ......................... 5, 12

Kulas v. Adachi, 96-6674, 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 12, 1997) ................. 11

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc. , 26 F. Supp. 2d 593 (S.D.N.Y. 1998) ........................................................................................................ 17

Langenberg v. Sofair, No. 03-8339, 2006 U.S. Dist. LEXIS 65276 (S.D.N.Y. Sept. 11, 2006) ........................................................................................ 5, 16

Lin v. Comprehensive Health Mgmt., Inc., No. 08-6519, 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 9, 2009) ...................................................................... 13, 18, 19, 20

Littlejohn v City of NY, 795 F3d 297, 302 (2d Cir 2015) ........... ............................. 24

Lopez v. Silverman, 14 F. Supp. 2d 405, 414 (S.D.N.Y. 1998) ......................................18

Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106 (2d Cir. 2013) .................... 21

Mantello v. Hall, 947 F. Supp. 92 (S.D.N.Y. 1996) ................................................ 11, 12

Mao v. Sands Bethworks Gaming L.L.C., No. 15-6252, 2016 U.S. Dist. LEXIS 56742 (S.D.N.Y. Apr. 28, 2016) ...................................................................................... 5,15

Melnick v. Adelson-Melnick, 346 F. Supp. 2d 499 (S.D.N.Y. 2004) ............................ 6

Mendez v. Pure Foods Mgmt. Grp., Inc., No. 14-1515, 2016 U.S. Dist. LEXIS 4661 (D. Conn. Jan. 14, 2016) ................................................................................................. 14, 15

Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) .................................. 9

Morse Typewriter Co. v. Samanda Office Commc'ns, Ltd., 629 F. Supp. 1150 (S.D.N.Y. 1986).......................................................................................................... 12

Nakahata v. N.Y.-Presbyterian Healthcare Sys., 723 F.3d 192 (2d Cir. 2013) ..................... 22

Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris, No. 03-1681, 2004 U.S. Dist. LEXIS 19614 (S.D.N.Y. Sept. 29, 2004) ...................................................... 6

iii

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC No. 05-9016, 2006 U.S. Dist. LEXIS 9159 (S.D.N.Y. Mar. 7, 2006) ...................................................... 10, 11

Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., 712 F.3d 705 (2d Cir. 2013) ............................................................................... 7

Perkins v. 199 SEIU United Healthcare Workers E., 73 F. Supp. 3d 278 (S.D.N.Y. 2014) ....... 21

Pont de Nemours & Co. v. Kolon Indus. , No. 12-8435, 2013 U.S. Dist. LEXIS 123949 (S.D.N.Y. Aug. 29, 2013) ................................................................................................... 14

Ruiz v. County of Rockland, 609 F.3d 486 (2d Cir. 2010) ...................................................... 24

Schenker v. Assicurazioni Generali S.p.A., No. 98-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 11, 2002) ......................................................................................................... 9

Universal Trading & Inv. Co. v. Credit Suisse Ltd. , 560 F. App'x 52 (2d Cir. 2014) ........... 8, 15

Volkswagenwerk AG. v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir. 1984) .......................... 13

Wilder v. News Corp., No. 11-4947, 2015 U.S. Dist. LEXIS 137158 (S.D.N.Y. Oct. 6, 2015) ... 8

Wiwa v. Royal Dutch Petrol. Co., 226 F.3d 88 (2d Cir. 2000) .................................................. 8

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) ................................................................................................................................. 16

Xue Lian Lin v. Comprehensive Health Mgmt., Inc., No. 08-6519, 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 9, 2009) ................................................................................. passim

Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003)...................................... 18

**Statutes**

29 U.S.C. § 142-2 ................................................................................................................. 2

29 U.S.C. § 203(d) (2012) .................................................................................................. 17

29 U.S.C. § 207(a) (2012) ................................................................................................... 2

N.Y. C.P.L.R. 302 .............................................................................................................. 15

N.Y. C.P.L.R. 302(a)(1) ..................................................................................................... 15

N.Y. C.P.L.R. 302(a)(2) ..................................................................................................... 15

N.Y. C.P.L.R. 302(a)(3) ..................................................................................................... 15

N.Y. C.P.L.R. 302(a)(4) ..................................................................................................... 15

N.Y. Exec. Law § 296 ................................................................................................. passim

N.Y. Exec. Law § 296(1)(a) ............................................................................................... 23

N.Y. Exec. Law § 301 .................................................................................................. 8, 11-12

**Other**

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 6

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KRISTIN BENZINGER, on behalf of herself, individually, and on behalf of all others similarly-situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO 16-8533 |
| | : | |
| v. | : | |
| | : | |
| LUKOIL PAN AMERICAS, LLC and LITASCO SA, | : | |
| | : | |
| | : | |
| Defendants. | : | |

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

LUKOIL Pan Americas, LLC ("LPA") and LITASCO SA ("LITASCO") (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their partial motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction over LITASCO, failure to plausibly allege that LITASCO is a joint employer and failure to state a claim for relief as to Counts I, II and VII.

## I.   PRELIMINARY STATEMENT

While not lacking in length, the Complaint suffers from multiple infirmities. As an initial matter, the 173-paragraph, 28-page Complaint falls far short of satisfying Plaintiff's burden of establishing even a *prima facie* case of personal jurisdiction over LITASCO, a Swiss limited company (*société anonyme*) with no office or permanent employees in the State of New York and no bank accounts in the United States. Disingenuously attempting to satisfy the "doing business" standard, the Complaint alleges that LITASCO maintains an office in New York. As the Bullock Affidavit confirms, however, LITASCO does not have an office or other presence in

New York State or anywhere else in the United States.  LPA, as a wholly owned but legally distinct subsidiary of LITASCO, has as its business purpose the marketing and trading of crude oil and refined petroleum products in the Western Hemisphere as part of the LITASCO Group companies, which eliminates the need for LITASCO to maintain any direct business activities in this geographic region. [1]   The law is clear that the Court need not credit Plaintiff's unsubstantiated allegations that have been refuted by LITASCO's sworn testimony.  Because the Complaint fails to make a *prima facie* showing of personal jurisdiction over LITASCO, LITASCO should be dismissed from this action pursuant to Rule 12(b)(2).

Further, should the Court find that it has personal jurisdiction over LITASCO, which it should not; the Court should dismiss the Complaint as against LITASCO because the Complaint is bereft of all indicia to support a finding that LITASCO was a joint employer.

Moreover, the Court should dismiss Plaintiff's Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 (a) and New York Labor Law (NYLL), N.Y. Labor Law §160, N.Y. Comp.Codes R. & Regs. tit. 12, § 142-2.2 individual and class overtime compensation claims because they are equally legally infirm as Plaintiff has failed to plausibly plead a violation of these statutes. Devoid of factual substance, the Complaint contains only generalized, conclusory allegations that she and other potential class members were "required to work in excess of forty hours," and were "not paid the required one and one-half times regular rate of pay for all hours worked per week in excess of forty." (Compl. ¶ 16).

Finally, Plaintiff has failed to state a plausible claim of national origin discrimination under the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 296, as the Complaint lacks facts suggesting any inference of discrimination towards Plaintiff on the basis of her status as a United States citizen.

---

[1] LPA is one of six wholly owned subsidiaries of LITASCO worldwide, with each covering crude oil and petroleum products marketing and trading activities in specific geographic regions.

5113314 v7

II.    **STATEMENT OF ALLEGED FACTS**

Accepting the non-jurisdictional facts asserted in the Complaint as true only for purposes of this motion, Plaintiff's allegations are summarized below.

### A. Allegations Related to Plaintiff's Individual FLSA and NYLL Overtime Compensation Claims

In the Complaint, Plaintiff, Kristen Benzinger ("Benzinger" or "Plaintiff"), alleges that she was hired by LPA as an Executive Assistant on or about March 22, 2013. (Complaint ¶ 31). Benzinger alleges that LPA is an entity organized and existing under the laws of the State of Delaware with headquarters located in New York City. (*Id.* at ¶ 9). "[LPA] is a subsidiary of Defendant, LITASCO, a Swiss entity." (*Id.* at ¶ 10). "Upon information and belief," Benzinger alleges that LITASCO maintains an office at 1095 Avenue of the Americas, 33rd Floor, New York, New York, 10036, the exact same address that Plaintiff alleges functions as LPA's headquarters. (*Id.* at ¶ 9). Additionally, Benzinger alleges upon information and belief that LPA is not able to make any human resource decision without the express permission of LITASCO, and its Head of Human Resources, Ms. Irina Akinshina. (*Id.* at ¶ 10).

With respect to the specifics of her employment, Plaintiff alleges that she was classified as an exempt employee under the FLSA and the NYLL. (*Id.* at ¶ 32). In her role as an Executive Assistant, Benzinger was responsible for, among other things, answering and directing phone calls, managing her supervisor's calendar and the office calendar, making travel arrangements, filing and organizing documents, maintaining expense reports, reconciling credit card transactions, and general office troubleshooting. (*Id.* at ¶ 32). On occasion, Benzinger alleges, she was required to perform receptionist duties. (*Id.* at ¶ 37).

By approximation, throughout Plaintiff's employment, Defendants required her to work at least fifty-five hours per week, and oftentimes more. (*Id.* at ¶ 39). Plaintiff also alleges that she was required to remain "on call" and available to send or respond to telephone calls, emails and text messages at all times. (*Id.* at ¶ 40). By her account, Benzinger was paid a flat weekly salary of $1,770.83, which computes to an hourly rate of $44.27 per hour. (*Id.* at ¶ 41).

### B. The Collective Action Allegations

The collective action allegations set forth in the Complaint are equally deficient as they fail to provide specific information to support collective action treatment. According to the Complaint, the putative class is comprised of:

> Current and former employees of Defendants who, during the applicable FLSA limitations period, performed *any* work for Defendants as executive assistants, financial assistants, and/or receptionists, who give consent to file a claim to recover damages for overtime compensation that is legally due to them for the time worked in excess of forty hours per week. ("FLSA Plaintiffs")

(*Id.*at ¶ 15). Wholly absent from the Complaint are any factual allegations suggesting, much less demonstrating, that the potential FLSA plaintiffs performed substantially the same duties as Plaintiff. Rather, the Complaint tersely notes that the FLSA Plaintiffs, who are employed in various job titles (Executive Assistants, Financial Assistants and Receptionists) performed similar tasks to Plaintiff. *See id*. at ¶ 16. Additionally, Plaintiff alleges that the FLSA Plaintiffs were required to work in excess of forty hours in a workweek, and were not paid the required one and one-half times their respective regular rates of pay for all hours worked per workweek in excess of forty. (*Id.*). Because the Complaint lacks specific factual allegations to support plaintiff's individual or collective action claims, dismissal is appropriate.

### C. Allegations Related to Plaintiff's National Origin Discrimination Claim

Benzinger is a citizen of the United States. (*Id.* at ¶ 8). No other facts related to Plaintiff's national origin are pled. Plaintiff alleges that upon her hire, Defendants advised her that she would replace Inga Bogutska, LPA's former Executive Assistant. (*Id.* at ¶ 44). According to Plaintiff, Ms. Bogutska made far "too many mistakes" and was "not competent for the role." (*Id.*). Ms. Bogutska was demoted to a receptionist role and was very unhappy about it. (*Id.* at ¶ 46). Plaintiff also alleges that Ms. Bogutska earned a lesser salary than Plaintiff but

4

received higher bonuses and was allowed to participate in LPA's profit sharing plan, unlike Plaintiff. (*Id.* at ¶ 61-62).

In the Complaint, Plaintiff alleges that Defendants had a blatant preference for Russian employees. (*Id.* at ¶ 53). Upon information and belief, Plaintiff alleges that unidentified employees of Russian descent were: (i) compensated more; (ii) given more professional development opportunities; (iii) promoted more quickly; (iv) not required to work outside of their assigned hours as much; (v) given more travel opportunities; (vi) given more and better training; (vii) given larger bonuses; and (viii) provided with educational benefits not offered to non-Russian employees. (*Id.* at ¶ 57). Further, Plaintiff alleges upon information and belief that Russian colleagues were given generous gifts. (*Id.* at ¶ 57).

## III.   LEGAL ANALYSIS

### A.   Legal Standard For Dismissal Pursuant to 12(b)(2)

It is well-established that a plaintiff bears the burden of showing that the court has jurisdiction over a defendant. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). At the motion to dismiss stage, a plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, *i.e.*, by making a '*prima facie* showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998); *Mao v. Sands Beth*works Gaming LLC, No. 15-6252, 2016 U.S. Dist. LEXIS 56742 (S.D.N.Y. Apr. 28, 2016). This "*prima facie* showing must be based solely on her Complaint and supporting affidavits" *Langenberg v. Sofair*, No. 03-8339, 2006 U.S. Dist. LEXIS 65276, at *14 (S.D.N.Y. Sept. 11, 2006), which "must include an averment of facts that, if credited by the trier [of fact], would suffice to establish jurisdiction over the defendant. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citation omitted). The allegations must contain factual specificity as mere conclusory statements that parrot statutory language will not suffice. *Jazini*, 148 F.3d at 184-85. While the court "construe[s] the pleadings and affidavits in the light most

favorable to [the plaintiff], resolving all doubts in [the plaintiff's] favor. . . .  [Doing so] is not the same as blindly crediting all allegations regardless of their factual support. *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 n.17 (S.D.N.Y. 2004) (citations omitted) (dismissing complaint for lack of personal jurisdiction).

"A court considering a motion to dismiss for lack of personal jurisdiction may consider all pertinent documentation submitted by the parties because such a motion is inherently a matter requiring the resolution of factual issues outside of the pleadings." *Beeney v. InSightec, Inc.,* No. 13-8022, 2014 U.S. Dist. LEXIS 99616, at * 5 (S.D.N.Y. July 7, 2014) (citation omitted). *See also, Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameris*, No. 03-1681, 2004 U.S. Dist. LEXIS 19614 at *5 (S.D.N.Y. Sept. 29. 2004) (noting that it is proper for a court reviewing a Rule 12(b)(2) motion to consider affidavits submitted by the parties).  At no point may a plaintiff rely on the bare pleadings alone to survive a 12(b)(2) motion to dismiss for want of personal jurisdiction. *Hickton v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010).  Accordingly, where a plaintiff fails to carry his or her burden, the "court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction." *Bradley v. Staubach*, No. 03 Civ. 4160, 2004 U.S. Dist. LEXIS 6584, at *8 (S.D.N.Y. Apr. 12, 2004).

**B.     Legal Standard For Dismissal Pursuant To Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  As a general matter, when deciding a Rule 12(b)(6) motion to dismiss, a court "is required to accept the material facts alleged in the [ ] Complaint as true." *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).  The court need not, however, accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*, No. 08-6519, 2009 U.S. Dist. LEXIS 29779, at *4-5 (S.D.N.Y. Apr. 9, 2009).

While a complaint need not contain detailed factual allegations, to survive a motion to dismiss, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its

5113314 v7

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007),

*accord Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  This must be "more than an

unadorned, the-defendant-unlawfully-harmed me accusation;" but a claim will only have "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also, Pension Ben. Guar. Corp. ex rel.*

*St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-

18 (2d Cir. 2013).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679 (citing Fed. R. Civ. P 8(a)(2)).

Where, as here, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558

(citations omitted).  Dismissal of claims failing to meet this standard is especially vital for cases

(such as this putative class action) that present the threat of "sprawling, costly, and hugely time-

consuming" discovery.  *Id.* at 560 n.6.

## C.   Plaintiff Fails To Make A Prima Facie Showing of Personal Jurisdiction Over LITASCO

A court may exercise personal jurisdiction over foreign corporate defendants in one of

two ways:  general or specific jurisdiction.  *Bank Brussels Lambert v. Fiddler Gonzalez &*

*Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).  General jurisdiction over a foreign corporate

defendant is based upon the defendant's "continuous and systematic course of doing business in

New York" even if the plaintiff's claim arises out of the defendant's non-forum related activities.

*Decraene v. Neuhaus (U.S.A.), Inc.*, No. 04-2876, 2005 U.S. Dist. LEXIS 10836, at * 9

5113314 v7

(S.D.N.Y. June 3, 2005). In contrast, specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities. *See Wilder v. News Corp.*, No. 11-4947, 2015 U.S. Dist. LEXIS 137158, at *18 (S.D.N.Y. Oct. 6, 2015).

1.   **LITASCO Is Not "Doing Business" in New York, Therefore There Is No Basis to Exercise General Personal Jurisdiction Over LITASCO**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796, 803 (2011). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624, 639 (2014). The relevant inquiry, as explained by the Supreme Court, "is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," but whether that corporation's "affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State." *Id.* at 761.

General jurisdiction in New York is governed by Section 301 of New York's Civil Practice Law and Rules ("CPLR") which only authorizes the exercise of general jurisdiction over a foreign corporation where a plaintiff sets forth facts showing a "continuous and systematic course of doing business" in New York that "warrants a finding of [defendant's] presence" in the state. *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 Fed. App'x. 52, 55 (2d Cir. 2014); *Wiwa v. Royal Dutch Petrol.Co.*, 226 F.3d 88, 95 (2d Cir. 2000), *cert. denied.*, 532 U.S. 941 (2001). "A corporation is "doing business" in the forum "if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (finding an "insufficient showing to make out even a prima facie case for [general] jurisdiction"). The "doing business"

standard is stringent because a corporation which is amenable to the Court's general jurisdiction "may be sued in New York on causes of action wholly unrelated to acts done in New York." *Jacobs v Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001). Accordingly, courts will decline to find jurisdiction even where it is alleged that a foreign defendant has extensive contacts with the forum state. *Schenker v. Assicurazioni Generali S.p.A.*, No. 98-9186, 2002 U.S. Dist. LEXIS 12845 (S.D.N.Y. July 11, 2002) (granting motion to dismiss notwithstanding allegations that the foreign defendant's employees regularly traveled to New York for business purposes, maintained three bank accounts in New York, directly solicited business from New York and obtained a partnership interest in an investment fund managed in New York, reasoning that "such contacts do not establish that [the foreign defendant] does permanent and continuous business in the state; rather, they show "occasional and isolated" contacts with the state . . .which are insufficient for personal jurisdiction under § 301") (*abrogated* on other grounds by *Bristol-Myers Squibb Co. v. Matrix Labs., Ltd.,* 964 F. Supp. 2d 287, 294 (S.D.N.Y. 2013).

> To determine whether an entity is "doing business" in New York, courts look to "a traditional set of indicia: for example, whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests.

*Decraene*, 2005 U.S. Dist. LEXIS 10836, at * 9 (citing *Wiwa*, 226 F.3d at 98). The Second Circuit has explained that "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; the courts should assess the defendant's contacts *as a whole.*" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F. 3d 560, 570 (2d Cir. 1996) (emphasis in original). *See also, Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004) ("The test for "doing business" is fact-sensitive but even fairly substantial contacts can fail to satisfy the statute").

9

Of the above-listed traditional indicia, the Complaint (incorrectly) alleges only "upon information and belief" that LITASCO maintains an office in New York. (Compl. ¶ 11). Contrary to Plaintiff's unsupported allegation, the Affidavit of Timothy Bullock confirms that LITASCO does not have an office in New York. (Bullock Aff. ¶ 7) (attached hereto as Exhibit A). The address pled in the Complaint as LITASCO's address is, in fact, LPA's primary place of business. This is no surprise to Plaintiff, as Plaintiff has simultaneously pled that this same address is LPA's headquarters. (*See id.* at ¶ 9). Because Mr. Bullock's sworn testimony rebuts Plaintiff's unsupported allegation that LITASCO maintains an office in New York, this allegation should be deemed refuted.

The decision in *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC is* instructive on this issue. No. 05-9016, 2006 U.S. Dist. LEXIS 9159, at *22-25 (S.D.N.Y. Mar. 7, 2006). In *Pension,* the plaintiffs argued that the exercise of jurisdiction was proper over International Fund Services Ireland ("IFSI"), an Irish corporation, and affiliate of New York-based International Fund Services of North America, by alleging that: (1) IFSI maintained offices and computer facilities in New York; (2) IFSI had regular contact with New York clients; (3) IFSI recruited Irish students to work in its New York office; and (4) IFSI's marketing material listed offices in New York, Dublin and the Grand Cayman Islands. *Id.* at *22. Notwithstanding these allegations, the court declined to exercise personal jurisdiction over IFSI reasoning the plaintiff

> failed to distinguish IFSI from the New York-based-IFS NA. Affidavits submitted by Susan Byrne and Eugene Mannella, the managing director of IFSI and the former President of IFS NA, respectively, explicitly refute these allegations. For example, while IFS NA maintains offices and computer servers in New York, IFSI has neither. Similarly, with respect to New York-based clients, plaintiffs rely on an International Fund Services marketing brochure listing a number of clients located within the state. However, this brochure refers to the services provided by International Fund Services as a whole; not specifically to services provided by

10

IFSI.  Once again, Susan Byrne attests that IFSI only services off-shore hedge funds and does not manage New York-based funds.

*Id.* at \*22-24.  The *Pension* reasoning applies with added force here where the Complaint itself demonstrates a glaring failure to distinguish LITASCO from LPA and goes so far as to allege that both entities operate out of the same New York office.  The Bullock Affidavit refutes the allegation that LITASCO has an office in the United States, much less New York State.  *Pension* is not an anomaly.  Other New York courts have declined to exercise personal jurisdiction where the plaintiff's allegations have been refuted by the defendant.  *See Mantello v. Hall*, 947 F. Supp. 92, 101 (S.D.N.Y. 1996) (granting motion to dismiss for lack of personal jurisdiction where defendants' affidavit "thoroughly refute[d]" plaintiff's allegation").  *See also, Kulas v. Adachi*, 96-6674, 1997 U.S. Dist. LEXIS 6868, at \*6 (S.D.N.Y. May 12, 1997) (granting motion to dismiss for lack of personal jurisdiction explaining that "a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations.  Rather, the defendant's moving papers must "entirely refute the plaintiff's allegations.").

LITASCO is not registered to do business in New York and has not authorized any person or entity to receive service of process on its behalf in New York.  (Bullock Aff. ¶¶ 5, 6).  LITASCO has no office, telephone, bank account, real property or permanent employees in New York.  (Bullock Aff. ¶¶ 9, 11, 12, 13).  Further, LITASCO does not currently solicit business from customers in New York because LPA, as LITASCO's subsidiary, is exclusively tasked with handling the trading of crude oil and petroleum products in the Western Hemisphere.  Finally, LITASCO has no agents or contractors in New York.  (Bullock Aff. ¶ 10).  It should also be noted that aside from this matter, LITASCO has never been a party to an action in the forum.  (Bullock Aff. ¶ 10).  Accordingly, the Complaint abjectly fails to plausibly allege sufficient facts to make a *prima facie* showing of general personal jurisdiction over LITASCO under Section

11

301. *Morse Typewriter Co. v. Samanda Office Commc'ns, Ltd.*, 629 F. Supp. 1150, 1152

(S.D.N.Y. 1986) (noting the foreign defendant was "not doing business and [was] not licensed to

do business in New York; [] it ha[d] no offices, employees, telephone listings, mailing addresses

or leased properties in New York and d[id] not manufacture, sell or warehouse goods in New

York").

### i. LITASCO's Ownership Of LPA Does Not Warrant The Exercise Of Personal Jurisdiction Over LITASCO

Any argument that the Court has personal jurisdiction over LITASCO due to its

ownership of LPA also fails.  It is bedrock law that a parent-subsidiary relationship alone is

insufficient for  a court to acquire personal jurisdiction over a foreign corporation. *Jazini*, 148

F.3d at 184 (affirming dismissal of complaint against foreign parent company of a U.S.

subsidiary); *Mantello*, 947 F. Supp. at 98 ("The mere existence of a business relationship with

entities within the forum state is insufficient to establish presence.") (citation omitted).  Rather,

"for New York courts to exercise personal jurisdiction over a foreign corporate defendant based

upon its subsidiary's in-state contacts, the foreign defendant must:  (1) have a subsidiary or

affiliate in New York which is a "mere department" of the foreign corporation or (2) employ or

retains a local entity to act as its agent. *Jazini*, 148 F.3d at 184; *Jacobs*, 160 F. Supp. 2d at 733-

734.  As discussed below, neither test is met here.

### ii. The Mere Department Test Fails

A corporate entity is considered to be a "mere department" of a parent company only

where the control of the lesser entity is "pervasive enough that the corporate separation is more

formal than real." *H. Heller & Co. v. Novacor Chemicals Ltd.*, 726 F. Supp. 49, 54 (S.D.N.Y.

1988), *aff'd* 875 F.2d 856 (2d Cir. 1989).  The test for evaluating whether one corporation is a

mere department of another involves consideration of four factors: (1) common ownership; (2)

5113314 v7

the financial dependency of the subsidiary on the parent corporation; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the extent of the parent's control over the subsidiary's marketing and operational policies. ("Beech Factors") *Volkswagenwerk AG. v Beech Aircraft Corp.*, 751 F. 2d 117, 120-121 (2d Cir 1984).  Nevertheless, "[p]arent corporations are allowed a range of normal shareholder involvement in the operations of their subsidiaries without rendering those subsidiaries 'mere departments' for jurisdictional purposes." *In re Ski Train Fire*, 230 F. Supp. 2d 410 (S.D.N.Y. 2002) (finding no personal jurisdiction notwithstanding common ownership and shareholder involvement in the operations of the subsidiaries)  "Courts will find a mere department where separate corporations function, in reality, as "integral" parts of a "united endeavor." *Jacobs*, 160 F. Supp. 2d at 734.

This test has not been met.  Aside from common ownership, which alone is insufficient for a finding of personal jurisdiction, Plaintiff's Complaint is devoid of any facts satisfying the remaining Beech Factors.  To be sure, Plaintiff's allegation that *upon information and belief* LPA is not able to make any human resources decision without the express permission of LITASCO and its head of human resources is wholly conclusory and entitled to no weight.  *See Lin*, 2009 U.S. Dist. LEXIS 29779, at *4-5 ("conclusory allegations or legal conclusions masquerading as factual conclusions" need not be accepted as true).  As noted in the Bullock Affidavit, LPA employs its own human resources personnel; LPA makes final hiring decisions with respect to its employees; LPA maintains its own policies for its employees; LITASCO and LPA each has its own separate board of directors, which is not unusual for a parent company with respect to its subsidiary; and LITASCO does not direct or control the day-to-day operations of LPA.  (Bullock Aff. ¶¶ 17, 19, 24, 25, 27, 28).  LITASCO exercises influence over LPA, only in its capacity as a

13

parent company, a typical form of general oversight for a parent company especially with respect to unusual or material decisions relating to its subsidiary.

### iii.    The Agency Test Fails

The "agent" standard requires that the subsidiary do "all the business which [the parent corporation] could do were it here by its own officials." *Frummer v. Hilton Hotels Int'l Inc.*,19 N.Y. 2d 533, 537 (1967).  New York courts interpret this "to mean that the agent's activities in New York must be 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, No. 12-8435, 2013 U.S. Dist. LEXIS 123949, at *25 (S.D.N.Y. Aug. 29, 2013) (citation omitted).  Plaintiff offers no facts in this regard.  Benzinger has not alleged, nor do the pleadings construed in the light most favorable to her give rise to an inference of, an agency relationship.

### iv.    Plaintiff's Joint Employer Theory Is Not Relevant To The Court's Determination of Personal Jurisdiction

Further, any argument that the exercise of personal jurisdiction is warranted because LITASCO acts as a joint employer fails.  Courts in the Second Circuit have explained that joint employer theories are "relevant for determining liability, but are not for determining whether a court may exercise personal jurisdictional over a party." *Mendez v. Pure Foods Mgmt. Grp., Inc.*, No. 14-1515, 2016 U.S. Dist. LEXIS 4661, at *15 (D. Conn. Jan. 14, 2016) (quoting *Hickton v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010)).  In *Mendez*, the court rejected the plaintiffs' attempt to premise the assertion of personal jurisdiction over foreign defendants based upon the joint employer theory of liability, reasoning that personal jurisdiction is a threshold standard and "[t]he standard for treating multiple defendants together as employers

14

for purposes of liability under specific statutes is perhaps not dissimilar to a jurisdictional standard, but it is distinct. *Id*. at \*18.

Accordingly, Defendants respectfully submit that there is no basis upon which to exercise general personal jurisdiction over LITASCO since it is not doing business in the forum in its own capacity and LPA is not a mere department or agent of LITASCO.

### 2. There is No Basis To Exercise Specific Personal Jurisdiction Over LITASCO[2]

Under Section 302(a)(1) of New York's long-arm statute, a court may exercise specific personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Universal Trading & Inv. Co.*, 560 Fed. App'x. at 54 (*citing In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). To determine whether jurisdiction exists under Section 302(a)(1), a plaintiff must show that: (1) the defendant transacts business in New York and (2) the plaintiff's cause of action arose from the defendant's business transaction." *Mao*, 2016 U.S. Dist. LEXIS 56742, at \*5-6. As discussed above, LITASCO conducts no business in the forum. (Bullock Aff. ¶ 5). LITASCO is neither incorporated in nor registered to do business in New York. (Bullock Aff. ¶ 5). LITASCO has no office in the forum and no permanent employees in the forum. (Bullock Aff. ¶¶ 7, 9).

Accordingly, because Plaintiff does not allege (and cannot demonstrate) a *prima facie* case to support the exercise of personal jurisdiction over LITASCO, the Complaint should be dismissed as against LITASCO pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

---

[2] CPLR § 302 provides three (3) additional bases for the exercise of specific personal jurisdiction over a foreign defendant: (1) torts committed within New York, C.P.L.R. § 302(a)(2); (2) torts committed outside New York which cause injury within the state, so long as the tortfeasor regularly does business within New York or should reasonably expect that the tortious conduct will cause consequences within New York, C.P.L.R. § 302(a)(3); and (3) ownership or possession of real property within New York, C.P.L.R. § 302(a)(4). None of these sections is applicable in the instant matter as Plaintiff does not allege that LITASCO engaged in any conduct falling within CPLR § 302 (a)(2), (a)(3) or (a)(4).

**D.      Any Exercise of Jurisdiction Over LITASCO Would Violate Due Process.**

Even assuming that Plaintiff can demonstrate that New York's long-arm statute applies to

LITASCO (it does not), due process considerations deprive this Court of personal jurisdiction.

For jurisdiction to comply with the protections of due process the foreign defendant must have

certain minimum contacts with the forum such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  "To determine if such "minimum contacts" exist, the court must inquire into

"the relationship among the defendant, the forum, and the litigation." *Langenberg*, 2006 U.S.

Dist. LEXIS 65276, at *18-19.  Only when a party "purposefully avails itself of the privilege of

conducting activities within the forum State," is it properly subject to suit there. *Int'l Shoe*, 326

U.S. 310, 316 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 1283, 78 S. Ct. 1228

(1958)).

Plaintiff does not—and cannot—allege the requisite minimum contacts for personal

jurisdiction, because the minimum contacts required by due process are substantially similar to

the "continuous and systematic" contacts necessary for the exercise of general jurisdiction,

which as discussed *supra*, have not been shown.  Likewise, Plaintiff does not point to a single

activity of LITASCO that is "purposefully directed" towards New York sufficient to support the

exercise of specific jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

295-96, 62 L. Ed. 2d 490, 100 S. Ct. 559  (1980) (finding no personal jurisdiction where

plaintiffs presented no evidence that defendant's products were sold to customers in the forum

state).

Even if Plaintiff did allege sufficient minimum contacts with New York, the exercise of

personal jurisdiction over LITASCO would not comport with notions of fair play or substantial

justice.  A court must examine a number of factors to determine whether the exercise of personal

5113314 v7

jurisdiction would be reasonable under due process, such as: (i) the burden on the defendant; (ii) the interests of the forum State; (iii) plaintiff's interest in obtaining relief; (iv) the judiciary's interest in obtaining the most efficient resolution of controversies; and (v) various social policy interests. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 116 (1987).

Here, those factors weigh heavily against exercising jurisdiction. First, the burden on LITASCO, a Swiss entity, would be substantial and unreasonable. LITASCO would be forced to litigate under the laws of a foreign jurisdiction in which they maintain no business operations and transact no business. *Asahi*, 480 U.S. 102 at 114 (emphasizing the burden of litigating in a "foreign legal system should have significant weight"). Second, given the complete absence of any facts connecting LITASCO to this forum, this forum has no interest in adjudicating this dispute against LITASCO. Third, dismissing LITASCO from this action would not prejudice Plaintiff or potential class members, as LITASCO is not a necessary party. Plaintiff's claims arise out of her employment with LPA who is subject to the Court's jurisdiction. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 599 (S.D.N.Y. 1998) (finding the exercise of jurisdiction over holding company defendant would be unreasonable where the actual tobacco manufacturers were before the court). Finally, there are no policy interests that necessitate the exercise of personal jurisdiction over LITASCO.

**E.      Plaintiff Failed to Plausibly Allege That LITASCO is a Joint Employer**

Assuming arguendo that the Court determines it has personal jurisdiction over LITASCO (it should not), the Complaint must nevertheless be dismissed against LITASCO since Plaintiff has not sufficiently alleged that LITASCO is a joint employer. The FLSA defines an employer broadly to include "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d). The Second Circuit has explained that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in the

17

"economic reality" of a particular employment situation."[3] *Barfield v. N.Y. City Health and Hosp. Corp.*, 537 F.3d 132, 140-141 (2d Cir. 2008). "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case." *Mao*, 2016 U.S. Dist. LEXIS 56742, at *5 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quotation omitted). As such, the goal of the economic-realities test is to determine whether the employees in question are economically dependent upon the putative employer." *Lopez v. Silverman*, 14 F. Supp. 2d 405, 414 (S.D.N.Y. 1998). Where, as here, a plaintiff pleads that more than one defendant is the plaintiff's employer, the plaintiff must allege facts sufficient to show that *each* defendant, in its own right, "possessed the power to control the workers in question" as employers. *Herman*, 172 F.3d at 139

Several factors, though not exclusive, guide the "economic realities" joint employer test: whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003). The *Zheng* factors make clear that to establish joint employer status, there must be a showing that LITASCO is actually and meaningfully involved in the employment and the conditions of employment of LPA employees and that LITASCO performed employer-like functions with respect to LPA employees. None of the *Zheng* factors are pled or met.

The Complaint is glaringly devoid of any of the elements of the economic realities test and does not assert any factual allegations that suggest that LITASCO was able to control LPA

---

[3] Because the FLSA and the NYLL employ similar standards with respect to employment status, the same test has been used to analyze both federal and state wage claims. *Cannon v. Douglas Elliman, LLC*, No. 06-7092, 2007 U.S. Dist. LEXIS 91139, at *9 (S.D.N.Y. Dec. 10, 2007). *See also, Lin*, 2009 U.S. Dist. LEXIS 29779, at *6 ("This same analysis applies to claims brought under the NYLL.").

employees or that LPA employees were economically dependent on LITASCO.  In support of her defective joint employer theory, Plaintiff makes one factual allegation:[4]

> Defendant Lukoil [LPA] is a subsidiary of Defendant Litasco [LITASCO], a Swiss entity, which in turn is a subsidiary of Lukoil OAO, which is located in Moscow.  Upon information and belief, Defendant Lukoil [LPA] is not able to make any Human Resources decision without the express permission of Defendant Litasco [LITASCO] and its head of Human Resources, Ms. Irina Akinshina."

(Compl. ¶10).  This conclusory allegation cannot carry the day and does not pass muster under the standards enunciated in *Iqbal* and *Twombly*.  Nowhere in the Complaint does Plaintiff allege that LITASCO had the power to hire or fire Plaintiff, set the rate and method of Plaintiff's wages, or that LITASCO regulated the conditions of Plaintiff's employment in any way.  Indeed the Complaint contains not a single allegation that LITASCO, *specifically*, was involved in denying pay for the time Plaintiff was allegedly owed.  Absent such averments, Plaintiff has failed to plausibly plead that LITASCO was her joint employer and the Complaint must be dismissed as plead against Defendant LITASCO.  *See, e.g., Harris v. NYU Langone Med. Ctr.,* No. 12-0454, 2013 U.S. Dist. LEXIS 99328, at *42 (S.D.N.Y. July 09, 2013) ("Nor can the non-NYULMC Defendants be properly labeled joint employers as Harris's pleadings are completely devoid of allegations that any other Defendant had "immediate control" over Harris, or that the other Defendants shared "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" with regard to Harris.") *(adopted by Harris v NYU Langone Med. Ctr.,* No. 12-0454, 2013 U.S. Dist LEXIS 139622, at *13 (S.D.N.Y.  Sep. 27, 2013); *Lin,* 2009 U.S. Dist. LEXIS 29779, at *6-8 (dismissing FLSA claims against individual defendants because complaint contained only conclusory allegations stated "upon information and belief" and alleged no facts about individual defendants' power to control terms and conditions of employment, hire and fire

---

[4] Plaintiff also alleges that "Defendant Litasco was at all times a joint employer that exercised complete control over Defendant Lukoil's employees," however, this statement is a legal conclusion which is entitled to no weight. (Compl. ¶ 11).  *See* Lin, 2009 U.S. Dist. LEXIS 29779, at *7.

employees, control pay practices, or maintain employment records); *Cannon*, 2007 U.S. Dist. LEXIS 91139 at *12 (dismissing FLSA and NYLL claims and holding that "beyond reciting the elements of a joint employer arrangement, plaintiffs have not shown that [the alleged employer] did, in fact, play a role in supervising plaintiffs' work.").

To be sure, Plaintiff's collective treatment of LITASCO and LPA by her repeated use of the term "Defendants" without distinction as to what specific actions each defendant is alleged to have taken fails miserably.[5]   In *Lin*, the plaintiffs sued several defendants as their alleged collective employers.   Much like the instant case, the *Lin* plaintiffs made no distinction between the individual defendants riddling the complaint with reference to the actions of "*defendants*" *Lin*, 2009 U.S. Dist. LEXIS 29779, at *7.   Unpersuaded by the plaintiffs attempt to treat the defendants as one and the same, the court reasoned that the complaint did not sufficiently allege the degree of control by each defendant over the "plaintiffs' hours, wages, or other terms and conditions of employment" to characterize them as "employers" pursuant to the FLSA.   *Id.* at *7. Accordingly, the *Lin* court found that the complaint failed to adequately allege that the defendants were "employers" under the FLSA or NYLL.   *Id.* at *8.

In sum, beyond reciting the elements of a joint employer arrangement, Plaintiff has not shown that LITASCO did, in fact, play any role in her employment.   Accordingly, the Complaint should be dismissed as against LITASCO.

### F.     Plaintiff's Allegations Do Not Establish A Plausible Claim Under The FLSA And The NYLL

Plaintiff fails to plead a plausible basis for recovery of purported overtime pay pursuant to the FLSA.   To state a claim under the FLSA sand NYLL for failure to pay overtime compensation, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well

---

[5]   It should be noted that although Plaintiff would like to treat LITASCO and LPA as one and the same, Plaintiff acknowledges in the Complaint that her employer was LPA and noted that she "accepted a position at Defendant Lukoil as an Executive Assistant." (Compl. ¶31).

as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  In doing so, a plaintiff "must provide *at least some approximation* of the overtime hours that defendants required them to work and a time frame for when those hours were worked." *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 509 (E.D.N.Y. 2011) (emphasis supplied).  To be sure, it is not enough for a plaintiff to allege by approximation or that he or she "typically" worked a given number of hours, or "occasionally" worked an extra shift. *Perkins v. United Healthcare Workers*, 73 F. Supp. 3d 278, 289 (S.D.N.Y. 2014) (J. Engelmayer) (citing *Lundy*, 711 F.3d at 114-15).  Though plaintiffs need not "plead their hours with mathematical precision" they must, at least, "draw on their own memory and experience" to provide sufficiently developed factual allegations. *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013) (affirming motion to dismiss FLSA and NYLL claims finding the plaintiff's allegation that she worked more than 40 hours in "some or all weeks" inadequate).

In the instant case, Plaintiff does not specify any particular weeks where she worked an excess of 40 hours but merely alleges "[b]y approximation, throughout her employment, Defendants required Plaintiff to work and Plaintiff did work, at least fifty-five hours per week, and oftentimes more," and "for each week that Plaintiff worked, Defendants paid Plaintiff a flat salary of $1,770.83 per week, which was meant to cover only the first forty hours the Plaintiff worked each week, and which computes to an hourly rate of $44.27 per hour." (Compl. ¶¶39, 41).  Plaintiff offers no additional information.  Plaintiff does not allege amounts of overtime hours worked, which would allow the parties and the Court to assess whether the Plaintiff (and Class Plaintiffs) actually earned any overtime.  These allegations cannot survive a motion to dismiss.  The Second Circuit has made clear that the "requirement that plaintiffs must allege overtime without compensation in a "given" workweek was not an invitation to provide an all-

purpose pleading template alleging overtime in "some or all workweeks." *DeJesus*, 726 F.3d at 90.

The generic one-size-fits-all allegations set forth in the Complaint bear striking resemblance to those dismissed by this Court in *Azeez v. Ramaiah*, No. 14-5623, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y. Apr. 9, 2015). Much like Plaintiff here, the plaintiff in *Azeez* pled FLSA and NYLL claims alleging that he "typically worked between 61 and 66 hours per week and averaged 65 hours per week" and was paid "a fixed weekly rate of pay in cash ranging from $475 to $600, regardless of the amount of hours he actually worked." *Id*. at *14. Relying on the Second Circuit's decision in *Lundy*, this Court found that the plaintiff failed to identify "a single workweek in which [he] worked at least 40 hours and also worked uncompensated time in excess of 40 hours" and, as such, he did not sufficiently plead that his average hourly wage fell below the federal minimum wage. *Id*. at *14-15. *Azzez* is not an anomaly. This Court and other courts have dismissed FLSA and NYLL claims when presented with equally deficient pleadings. *See e.g., Nakahata v. N.Y. Presbyterian Healthcare Sys.*, 723 F.3d 192, 199-201 (2d Cir. 2013) (affirming dismissal of FLSA and NYLL claims reasoning that "Plaintiffs failed to plead sufficient facts to make it plausible that they worked uncompensated hours in excess of 40 in a given week" where Plaintiffs broadly alleged that they "regularly worked hours both under and in excess of forty per week and were not paid for all of those hours"); *Hinckley v. Seagate Hosp. Grp., LLP*, No. 16-6118, 2016 U.S. Dist. LEXIS 152799, at *14 (W.D.N.Y. Nov. 2, 2016) (finding FLSA allegations insufficient where the plaintiff alleged "[o]n numerous occasions throughout his employment, including during the three (3) years preceding the filing of this action, [the] Named Plaintiff. . . worked over forty (40) hours in a workweek, thus entitling him to overtime pay at time-and-a-half his regular rate of pay"); *Perkins*, 73 F. Supp. 3d 278, 289 (J. Engelmayer) (granting motion to dismiss FLSA claim where the plaintiff alleged only that "[a]t

all relevant times since 2008 he was assigned and actually worked more than 40 hours per week," reasoning that "[w]ithout more detailed factual content—including identifying any specific week or time period in which Perkins worked overtime but was not lawfully paid for it—the Amended Complaint cannot cross the line from conceivable to plausible") (citation omitted).

Accordingly, because the "by approximation" allegations in the Complaint "supply nothing but low-octane fuel for speculation, not the plausible claim that is required" to sustain a claim, Plaintiff's individual and class FLSA and NYLL claims must be dismissed. *Azeez*, 2015 U.S. Dist. LEXIS 46574, at *14.

### G.   Plaintiff's Allegations Do Not Establish A Plausible Claim Of National Origin Discrimination Under The New York State Human Rights Law

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . national origin . . . to refuse to hire or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296 (1)(a). To establish a *prima facie* case of discrimination based on national origin, ancestry or ethnicity, Plaintiff must show that: "(1) [s]he is a member of a protected class; (2)[s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *Ruiz v. Cty of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). For the purposes of this motion only, LPA concedes that Plaintiff has adequately pled that she is a member of a protected class as she has alleged that she is a United States Citizen,[6] and she was qualified for the position and she

---

[6] The Second Circuit "has yet to expressly adopt a test for determining whether a non-minority plaintiff qualifies as a member of a protected group" but has done so implicitly. *Barella v. Vill. of Freeport*, 16 F. Supp. 3d 144, 159 (E.D.N.Y. 2014) (noting that in cases of reverse discrimination, a white plaintiff could satisfy the first prima facie

suffered an adverse action.   However, Plaintiff's prima facie case fails at the fourth prong. Plaintiff has advanced no facts that suggest an inference of discrimination.

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Berlyavsky v N.Y. City Dep't of Envtl. Prot.*, No. 14-03217, 2015 U.S. Dist. LEXIS 133647, at *25 (E.D.N.Y Aug. 28, 2015) (citing *Littlejohn v City of NY*, 795 F3d 297, 302 (2d Cir 2015)).   The crux of Plaintiff's NYSHRL claim is that LPA had a preference for Russian employees.   Nowhere in the Complaint are there any facts suggesting that this alleged preference amounted to discrimination against Plaintiff, an American citizen.   To be sure, there are no allegations that Plaintiff was criticized in ethnically degrading terms or that invidious comments were made about other American citizens.   In fact, by Plaintiff's own account, Inga Bogutska, the only employee whom Plaintiff alleges by name received preferential treatment on the basis of her alleged Russian background[7] was described by LPA as "not competent for the role" and noted to "mak[e] far too many mistakes." (Compl.¶ 44).   Further, Plaintiff alleges that Ms. Bogutska was demoted and unhappy about her demotion.   (*Id.* at ¶46).   Thus, even using Plaintiff's version of events, Ms. Bogutska, who earned a lesser salary than Plaintiff and was demoted, could not, in fact, have been the recipient of preferential treatment.   Accordingly, Plaintiff has failed to plead facts suggesting an inference of discrimination and her national origin discrimination claim must be dismissed.   *See, Berlyavsky*, 2015 U.S. Dist. LEXIS 133647,

---

element of a race discrimination claim under Title VII when that element is framed as being a member of a racial minority or belonging to a protected class).

[7] It should be noted that Plaintiff does not explicitly allege that Ms. Bogutska is Russian but states only that "Defendant's clear bias for Russian employees was most prevalent in the vast disparity between plaintiff's wages and those of her Russian counterparts, including and especially Inga." (Compl. at ¶ 59).

at * 27 (dismissing NYSHRL discrimination claim where the plaintiff alleged that the defendant "treated Latin and African American, and Chinese coworkers more favorably with regard to resources and equipment necessary to perform the work, promotion and overtime opportunities, and supervision", finding that "none of Plaintiff's allegations directly indicate a discriminatory bias").

## IV.   **CONCLUSION**

For the foregoing reasons, the court should dismiss (i) Plaintiff's Complaint as against LITASCO for lack of personal jurisdiction or in the alternative for failure to plausibly allege that LITASCO is a joint employer, and (ii) counts I, II and VII for failure to state a claim upon which relief can be granted, and also award Defendants such other and further relief as the Court deems just and proper.

Respectfully submitted,
Obermayer Rebmann Maxwell & Hippel LLP

_____
Joseph J. Centeno, Esquire
Charlene A. Barker, Esquire
Obermayer Rebmann Maxwell & Hippel LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA  19102
215.665.3063 (phone)
215.665.3165 (fax)
*Counsel for Defendants*

Dated:  January 27, 2017

## CERTIFICATE OF SERVICE

I, Charlene A. Barker, hereby certify that on January 27, 2017, I caused to be served a true and correct copy of the foregoing Partial Motion to Dismiss of Defendants LUKOIL Pan Americas, LLC and LITASCO SA, the Memorandum of Law in Support thereof and Affidavit of Irina Akinshina by ECF and United States mail, first-class, postage prepaid, upon the following:

Megan Goddard, Esquire
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001-3904

Charlene A. Barker

5113314 v7