UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KRISTIN BENZINGER on behalf of herself,
Individually, and on behalf of all others similarly          Case No. 16-CV-8533 (PAE)
situated,

                              Plaintiff,

              - against -

LUKOIL PAN AMERICAS, LLC and
LITASCO SA,

                              Defendants.
------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**


                                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                                        *Attorneys for Defendants*
                                        77 Water Street, Suite 2100
                                        New York, NY 10005
                                        212-232-1300

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ....................................................................................................2

ARGUMENT ......................................................................................................................6

I.      PLAINTIFF CANNOT RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO HER DISCRIMINATION CLAIMS .................................................6

      A.      Plaintiff's NYSHRL National Origin Discrimination Claim Fails .............6

            i.      Plaintiff Did Not Suffer a Materially Adverse Action ....................7

            ii.     Plaintiff Cannot Establish An Inference of Discrimination ............9

            iii.    Lukoil's Legitimate, Nondiscriminatory Reason and Pretext........12

      B.      Plaintiff's NYCHRL National Origin Discrimination Claim Fails ..........14

II.     PLAINTIFF CANNOT RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO HER RETALIATION CLAIMS ...................................................15

      A.      Plaintiff Did Not Engage In Protected Activity ........................................15

            i.      Purported National Origin Discrimination Complaint..................15

            ii.     Purported FLSA Misclassification Complaint.............................17

      B.      Plaintiff Did Not Suffer an Adverse Action ..............................................18

III.    LITASCO IS NOT SUBJECT TO JOINT EMPLOYER LIABILITY .................21

CONCLUSION..................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................10

*Balut v. Loral Elec. Sys.*,
    988 F. Supp. 339 (S.D.N.Y. 1997) ...................................................................23

*United States v. Bestfoods*,
    524 U.S. 51 (1998)............................................................................................23

*Chertkova v. Conn. Gen. Life Ins. Co.*,
    92 F.3d 81 (2d Cir. 1996)................................................................................12

*Concepcion v. City of New York*,
    No. 15-CV-2156(AJP), 2016 U.S. Dist. LEXIS 11352 (S.D.N.Y. Jan. 29, 2016) .................11

*Dachman v. Shalala*,
    9 Fed. Appx. 186 (4th Cir. Apr. 6, 2001)........................................................11

*Dowrich-Weeks v. Cooper Square Realty, Inc.*,
    535 Fed. Appx. 9 (2d Cir. 2013) .......................................................................7

*Elmenayer v. ABF Freight Systems, Inc.*,
    318 F.3d 130 (2d Cir. 2003)............................................................................13

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)..........................................................................................14

*Fenner v. News Corp.*,
    No. 09-CV-09832(LGS), 2013 U.S. Dist. LEXIS 170187 (S.D.N.Y. Dec. 2, 2013) .. 21, 22, 23

*Fincher v. Depository Trust & Clearing Corp.*,
    604 F.3d 712 (2d Cir. 2010)............................................................................20

*FLSA. Potenza v. City of New York*,
    365 F.3d 165 (2d Cir. 2004)............................................................................15

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295 (2004) ........................................................................................14

*Galabya v. New York City Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000)..............................................................................8

*Goodman v. Port Auth. of N.Y. & N.J.*,
    2013 U.S. Dist. LEXIS 134921 (S.D.N.Y. Sept. 18, 2013)............................15

*Greathouse v. JHS Sec. Inc.*,
    784 F.3d 105 (2d Cir. 2015)............................................................................17

*Harris v. Forklift Systems, Inc.*,
    510 U.S. 17 (1993)...........................................................................................14

*Hawkins v. Astor Home for Children*,
    No. 96-CV-8778(SS), 1998 U.S. Dist. LEXIS 3599 (S.D.N.Y. March 23, 1998) .................11

*Henry v. NYC Health & Hosp. Corp.*,
    18 F. Supp.2d 396 (S.D.N.Y. 2014)................................................................20

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)............................................................................19

*Jimenez v. City of New York*,
    605 F. Supp. 2d 485 (S.D.N.Y. 2009).............................................................15

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
   563 U.S. 1 (2011) ............................................................................................ 17

*Kaytor v. Electric Boat Corp.*,
   609 F.3d 537 (2d Cir. 2010) ....................................................................... 7, 14

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
   716 F.3d 10 (2d Cir. 2013) ............................................................................ 15

*Kittrell v. City of New York*,
   No. 10-CV-2606, 2013 U.S. Dist. LEXIS 77101 (E.D.N.Y. Mar. 14, 2013) ......................... 20

*Kulak v. City of New York*,
   88 F.3d 63 (2d Cir. 1996) .............................................................................. 14

*Leibowitz v. Cornell Univ.*,
   584 F.3d 487 (2d Cir. 2009) ............................................................................. 7

*McCall v. Genpak, LLC*,
   2015 U.S. Dist. LEXIS 133762 (S.D.N.Y. Sept. 30, 2015) ..................................... 6

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ........................................................................ 6, 13, 14, 15

*McKenzie v. Estee Lauder Cos.*,
   No. 09-CV-606 (WDW), 2010 U.S. Dist. LEXIS 115871 (E.D.N.Y. Sept. 22, 2010) ........... 16

*Melman v. Montefiore Med. Ctr.*,
   98 AD3d 107 (1st Dep't 2012) ..................................................................... 7, 10

*Norville v. Staten Island Univ. Hosp.*,
   196 F.3d 89 (2d Cir. 1999) ............................................................................ 11

*Oncale v. Sundowner Offshore Servs. Inc.*,
   523 U.S. 75 (1998) ...................................................................................... 13

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) .......................................................................... 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) .................................................................................... 13

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947) .................................................................................... 22

*Spiegel v. Schulmann*,
   604 F.3d 72, 80 (2d Cir.2010) ....................................................................... 14

*Texas Department of Community Affairs v. Burdine*,
   450 U.S. 248 (1981) .................................................................................... 12

*Velez v. Novartis Pharms. Corp.*,
   244 F.R.D. 243 (S.D.N.Y. 2007) ..................................................................... 21

*Victory v. Hewlett-Packard Co.*,
   34 F. Supp. 2d 809 (E.D.N.Y. 1999) ............................................................... 21

*Weber v. City of New York*,
   973 F. Supp. 2d. 227 (E.D.N.Y. Sept. 29, 2013) ............................................... 19

*Whidbee v. Garzarelli Food Specialties, Inc.*,
   223 F.3d 62 (2d Cir. 2000) ........................................................................... 21

*Williams v. N.Y.C. Hous. Auth.*,
   872 N.Y.S.2d 27 (1st Dep't. 2009) ................................................................ 14

*Wolf v. Time Warner, Inc.*,
   548 F. App'x 693 (2d Cir. 2013) ................................................................... 15

*Woroski v. Nashua Corp.*,
   31 F.3d 105 (2d Cir. 1994) .................................................................................................. 13
*Zheng v. Liberty Apparel Co.*,
   355 F.3d 61 (2d Cir. 2003) .................................................................................................. 22

## PRELIMINARY STATEMENT

Defendants Lukoil Pan Americas, LLC ("Lukoil") and Litasco SA ("Litasco"), by their attorneys Lewis Brisbois Bisgaard & Smith LLP, submit this memorandum of law in support of their motion for partial summary judgment on Counts Five, Six, Seven, Eight, Nine and Ten of Plaintiff's Amended Complaint. As demonstrated below, Plaintiff cannot raise any genuine issues of triable fact with respect to the claimed violations of the New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL", respectively), or the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA") or as to any of her claims against Litasco.

Plaintiff cannot raise a genuine issue of fact as to either discrimination or retaliation. First, Lukoil, her employer, did not discriminate against her based on her national origin and she is unable to make the necessary showing that she was treated less well than colleagues of Russian origin. Importantly, Inga Bogutska, the individual Plaintiff identifies as a comparator, is Ukrainian, not Russian. Even assuming that Bogutska did identify as Russian, the uncontroverted evidence establishes that Bogutska was not "baselessly compensated significantly more" than Plaintiff, nor was she afforded a better position or otherwise treated more favorably in any material respect. In fact, the opposite is true. Plaintiff acted as Bogustska's *de facto* supervisor during her tenure at Lukoil, made a higher base salary than Bogutska, and received a larger discretionary bonus. Moreover, none of Plaintiff's supervisors, Lukoil's most senior executives, are Russian, and the company employed few people of Russian origin.

Similarly, Plaintiff's retaliation claims also fail on several levels. First, the evidence demonstrates that Plaintiff never actually complained about national origin discrimination or her alleged misclassification as an exempt employee, vitiating her NYSHRL, NYCHRL, and FLSA retaliation claims. Putting that aside, Plaintiff is also unable to identify any actions taken in

retaliation by Lukoil. At her deposition, Plaintiff testified that Defendants retaliated against her by paying her less than Bogutska, and excluding her from planning conversations. However, the record establishes that Plaintiff was paid more than Bogutska, and, when pressed, Plaintiff could not identify any meetings from which she was excluded. Finally, Plaintiff also curiously alleged that she was retaliated against by both giving her too much work and, at the same time, taking work away. This inherent inconsistency commands summary judgment.

All told, the facts do not fit Plaintiff's narrative. Plaintiff did not leave Lukoil because she suffered discrimination or retaliation; she left because she found a better paying position that was in line with her ultimate salary goals.

Additionally, Plaintiff has no basis for any of her claims against Litasco. It is an affiliated company based in Geneva which was never Plaintiff's employer.

## STATEMENT OF FACTS

Defendants respectfully refer to their Statement of Undisputed Facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York for a full recitation of the facts.[1] The following is a summary.

### A. Plaintiff's Role and Responsibilities with Lukoil

By letter, dated March 22, 2013, Lukoil offered Plaintiff the position of Executive Assistant, subject to a 90-day introductory period, to work in the company's New York City headquarters.[2] 56.1 ¶ 1. Plaintiff, who self-identifies as an American of German descent, accepted that offer and

---

[1] Unless otherwise indicated, all references to "Exhibit" are to the exhibits annexed to the Declaration of Adam E. Collyer, dated March 8, 2019, ("Collyer Dec."). Also submitted herewith in support of the motion are the parties' joint Statement of Undisputed Facts (the "Joint Statement"), Defendants' Statement of Undisputed Facts (the "56.1"), and the declaration of Simon Fenner (the "Fenner Dec."). The transcript of Plaintiff's deposition is cited as the "Pl. Tr."

[2] Importantly, Plaintiff was hired by Lukoil, and not by Litasco.

began her tenure with Lukoil just over one month later, on April 29, 2013. *Id.*, ¶ 14.  In the role of Executive Assistant, Plaintiff earned an annual base salary of $85,000, and was eligible for numerous benefits, including a non-guaranteed discretionary bonus contingent on company and individual performance, and participation in Lukoil's Profit Sharing Plan (the "Profit Sharing Plan"), pursuant to which eligible employees receive annual distributions based on rules generated by Lukoil's Profit Sharing Plan Committee (approved by the Internal Revenue Service in accordance with Section 401 of the Internal Revenue Code).  *Id.* ¶¶ 4-13.

Throughout her employment, Plaintiff reported directly to Lukoil's most senior executives, each of whom held the title of Managing Director.  *Id.* ¶ 15-16.  From April 29, 2013 to July 2014, Plaintiff reported to James Reynolds and Thomas Rodilosso. *Id.* From July 2014 until her February 2015 resignation, Plaintiff reported to Simon Fenner, Lukoil's current Managing Director.  *Id.* ¶ 18. Both Reynolds and Rodilosso are American, while Fenner is British.  *Id.* ¶ 19, 61.  None of the three are of Russian descent.

As the Executive Assistant, Plaintiff had numerous varied responsibilities, including assisting the Managing Directors and Chief Legal Director, as well as overseeing procurement, IT, travel, expenses, and mobile phone.  *Id.* ¶ 22.  Plaintiff also performed various *ad hoc* work, including handling office remodeling and developing presentation strategy.  *Id.* ¶¶ 23-24.  Plaintiff viewed herself as the "go-to person for office related knowledge, IT and phone trouble shooting," and also renegotiated all office supplier contracts, upgraded the lunch ordering program, created a new electronic filing system, and assisted in obtaining visas for foreign workers.  *Id.* ¶¶ 25-27.

One role that Plaintiff found particularly challenging was managing and supervising Inga Bogutska. *Id.* ¶¶ 28-29.  Bogutska, who had worked for Lukoil since 2009, was effectively demoted to receptionist when Plaintiff was hired.  Fenner Dec. ¶ 22.  As Executive Assistant, Plaintiff acted

as Bogutska's *de facto* supervisor. *Id.* ¶ 28. The differences in title and job duties were recognized through compensation – in 2014, Bogutska earned a base salary of $73,129.92, which was nearly $12,000 less than Plaintiff's base salary. *Id.* ¶¶ 30-31. Moreover, while each earned a discretionary bonus in 2014, Bogutska received $10,000, while Benzinger received $12,500.  *Id.* ¶¶ 32-34.

## B.  Plaintiff's Requests for Advancement

In March 2014, just prior to her one year anniversary with Lukoil, Plaintiff requested a $5,000 raise in her base salary. 56.1. ¶ 38.  Although she did not receive that increase at that time, she did raise the prospect of additional compensation again later in the year. *Id.* ¶ 39. Soon after Simon Fenner's hiring, Plaintiff sought a meeting with him and Jennifer Diehl, Lukoil's human resources consultant, to discuss several requests related to her salary and role with the company. *Id.*, ¶ 30.  That meeting took place in September, and Plaintiff summarized the discussion in a September 30, 2014 email. *Id.* ¶ 41.  Specifically, Plaintiff wrote,

In summation of our recent meeting:

> ➢ I am above or within the benchmark for my current role of Executive Assistant
>
> ➢ Performance reviews only determine bonus size, they will be completed in March 2015
>
> ➢ I am to continue to respond to afterhours request [*sic*] only if they are urgent
>
> ➢ We will explore role expanding and upgrade opportunities in the mid and long term
>
> ➢ I requested a $5,000 increase in base salary first in March of 2014 and again today
>
> ➢ I will remain an exempt employee
>
> ➢ [Plaintiff's] Total comp expectation is 135k – 140k in the EA Role

Exhibit H [bracketed material added].

Plaintiff additionally sought an additional week of vacation time. *Id.* In response, Fenner advised Plaintiff that she would not receive a raise because her salary was in line with the market metrics based on the benchmarking data provided by Principal Search, a third party expert Lukoil retained. Fenner Dec. ¶ 12. Fenner did, however, advise Benzinger that her base salary would be reviewed at an indeterminate point, and that he and Diehl would explore expanding her role and upgrading her opportunities in the mid- and long-term, as she had requested. 56.1 ¶ 46. Fenner also informed her that she would not receive a permanent fourth week of vacation, and that he had spoken with his predecessor, Rodilosso, who confirmed that her four week vacation allowance during the prior year had been a special dispensation for the year Plaintiff had gotten married and had other family commitments. *Id.* ¶ 47.

### C. Plaintiff's Job Search and Ultimate Resignation

On November 1, 2014, in response to Fenner's October 29 email, Plaintiff thanked him for the detailed response and acknowledged that, while she was disappointed with his initial conclusions, she was excited to work with him on future solutions and evolving her role. *Id.* ¶ 48. However, Plaintiff was clearly dissatisfied with the answers she was given, as she began searching elsewhere for employment and took interviews with Columbia University ("Columbia") and another company, Riot Games. *Id.* ¶ 50.

Columbia offered Plaintiff the position of Director of the President's House in the Office of the President on January 5, 2015. *Id.* ¶ 51. Plaintiff, however, did not immediately accept that offer. Instead she asked Columbia that she be able to delay her decision so she could interview with another company. *Id.* ¶ 52. Ultimately, Plaintiff accepted Columbia's offer, which carried a starting

salary of $115,000 annually, a $30,000 increase from Lukoil.  *Id.* ¶¶ 53-54.[3]  On January 20, 2015,

Plaintiff resigned from Lukoil. *Id.* ¶ 56.  Her last day of employment was February 3, 2015. *Id.* ¶ 57.

On November 2, 2016, Plaintiff filed this action, asserting claims under the FLSA, New York

Labor Law, NYSHRL, and NYCHRL [DE 1].  Plaintiff filed an Amended Complaint on July 28,

2017 [DE 17].  Defendants now move for summary judgment on Counts Five, Six, Seven, Eight,

Nine, and Ten as to Lukoil and all of the claims as against Litasco.

## ARGUMENT

## I.    PLAINTIFF CANNOT RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO HER DISCRIMINATION CLAIMS

Amended Complaint Counts Seven and Eight allege that Defendants discriminated against

Plaintiff on the basis of her national origin in violation of the NYSHRL and NYCHRL. Specifically,

Plaintiff alleges that she, as an American citizen of German descent, was "treated like a pariah," and

that Defendants "openly favored Plaintiff's Russian colleagues to Plaintiff's detriment." Amended

Complaint, ¶ 2.  Because the evidence in this case does not support Plaintiff's *post hoc* narrative, she

cannot raise a genuine issue of fact as to her national original discrimination claims.

### A.    Plaintiff's NYSHRL National Origin Discrimination Claim Fails

It is well settled that the shifting burden framework established in *McDonnell Douglas Corp.*

*v. Green* is used to analyze discrimination claims under federal and New York law.  *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *McCall v. Genpak*, LLC, 2015 U.S. Dist.

LEXIS 133762, *36 (S.D.N.Y. Sept. 30, 2015) ("Courts analyze claims for adverse employment

actions . . .  under Title VII [and] the NYSHRL . . under the familiar three-part framework set forth

---

[3] As of July 2018, that salary rose to $130,000 annually, which is aligned with the salary she sought during her September 2014 meeting with Fenner and Diehl.  56.1 ¶¶ 55, 58.

by the Supreme Court"); *Melman v. Montefiore Med. Ctr.,* 98 AD3d 107, 112 (1st Dep't 2012).[4]   In order to establish a *prima facie* case of discrimination, a complainant must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

If the plaintiff makes this *prima facie* showing, the employer must come forward with evidence to demonstrate that it had a legitimate business reason for taking the actions that the complainant alleges are discriminatory.  The employer's burden here is one of production only; that is, the employer must only articulate, not prove, a legitimate, non-discriminatory reason for the adverse action taken.  *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552-553 (2d Cir. 2010).  If the employer articulates a legitimate reason, the burden then shifts back to the complainant to demonstrate that the proffered reason was merely a pretext for discrimination.  *Id.* The burden of production shifts, but the burden of persuasion remains with the plaintiff.

For the purposes of this motion only, it is uncontested that Plaintiff can establish the first two elements of a *prima facie* case – as a self-identified American of German descent, Plaintiff is a member of a protected class, and she was qualified for the position of Executive Assistant when she was hired in March 2013.  However, Plaintiff cannot establish either of the remaining elements of a *prima facie* case, and, thus, her NYSHRL discrimination claim fails.

### i.    Plaintiff Did Not Suffer a Materially Adverse Action

To establish that she suffered from an adverse employment action, Plaintiff must show that she endured "a materially adverse change in the terms and conditions of employment," such as "a

---

[4] Because claims brought under the NYSHRL "are analytically identical" to their federal sister statutes, both federal and state case law is instructive.  *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 Fed. Appx. 9, 11 n.2 (2d Cir. 2013).

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Here, Plaintiff does not allege that she was demoted or suffered a decrease in compensation during her tenure at Lukoil. Rather, she alleges that Lukoil "openly favored Plaintiff's Russian colleagues to Plaintiff's detriment." Amended Complaint ¶ 2. Specifically, Plaintiff alleges that Inga Bogutska, Lukoil's receptionist, was "baselessly compensated significantly more" and afforded a better position than Plaintiff. Such a complaint is belied by the uncontroverted evidence.

It is critical to emphasize that despite Plaintiff's assumptions, Bogutska is not Russian; she is Ukrainian. 56.1 ¶ 64. In fact, Bogutska's resume indicates that she attended the Ukraine Polytechnical Institute and the Ukraine School of Art, both in Kiev, Ukraine. *See* Exhibit P. During her deposition, Plaintiff conceded that Plaintiff "could be" Ukrainian, and that she was "not sure what [Bogutska's] citizenship or passport looks like." Pl. Dep. at 87:4-8. Given the well known political and territorial disputes between the two countries of which the Court can take judicial notice, it is clear that individuals of Ukrainian descent are not to be mistaken for those of Russian descent, and vice versa.

That said, even if Bogutska were Russian, Plaintiff cannot raise a genuine issue as to her hollow contention that Lukoil treated Bogutska more favorably than Plaintiff. Plaintiff earned approximately $12,000 more annually in base salary than Bogutska. 56.1 ¶¶ 30-31. Additionally, in 2014, the only year in which Plaintiff was eligible to receive a discretionary bonus, Lukoil gave Plaintiff a discretionary bonus of $12,500, compared to Bogutska's $10,000. *Id.* ¶¶ 32-34. In total, Plaintiff's total earned compensation in 2014 was $14,370.08 higher than Bogutska's. The numbers do not lie – Bogutska was not "baselessly compensated significantly more" than Plaintiff, her *de*

*facto* supervisor.

Plaintiff will likely attempt to justify this claim by pointing to her distribution through Lukoil's annual Profit Sharing Plan, which was less than Bogutska's. These distributions, though, are nothing more than a red herring. The Profit Sharing Plan involves a discretionary distribution from Lukoil to its employees as a whole. *Id.* ¶ 9. Each year, Lukoil's Managing Director determines the total amount of funding for the Profit Sharing Plan, and distributions are made according to the Profit Sharing Plan's approved rules. *Id.* ¶¶ 10-11. No Lukoil employee, including the Managing Director, has any discretion  with respect to amounts of the individual employee distributions. *Id.* ¶ 12. Lukoil employees are eligible to receive Profit Sharing Plan distributions only after one year of service, and distributions are pro-rated based on the date an employee becomes eligible. *Id.* ¶ 13. Thus, in 2014, Bogutska, who had been employed by Lukoil since 2009, received a distribution of $15,265.16 based on her annual compensation. *Id.* ¶ 36.

In contrast, Plaintiff was not hired until April 29, 2013.  As such, she did not become eligible to participate in the Profit Sharing Plan until one year later, on April 29, 2014. *Id.* ¶ 37.  Given the timing, Plaintiff's distribution was pro-rated to account for her ineligibility for the first four months of the year, which equates to one-third of 2014. In other words, Plaintiff did not receive a distribution based on her annual salary of $85,000, but on $56,666.64, which is the share of Plaintiff's salary accounted for between May and December. *See* Exhibit G.  Accordingly, Plaintiff received a distribution of $10,405.68, which was less than Bogutska received, but based on a lower number because only two-thirds of her compensation was used for the calculation. *Id.*

### ii.    Plaintiff Cannot Establish An Inference of Discrimination

Plaintiff cannot establish the fourth element of a *prima facie* case since she cannot identify any adverse action by Lukoil against her.  However, even assuming that Bogutska's Profit Sharing Plan distribution constituted an adverse action against Plaintiff, the circumstances surrounding that

distribution simply do not give rise to an inference of discrimination.  First, as set forth above, no Lukoil employee, including its most senior executives, has the discretion to modify the amount of distribution an individual employee receives from the Profit Sharing Plan.  Those distributions are made based on specific rules determined outside of Plaintiff's specific circumstances.

*Melman v. Montefiore Med. Ctr.* is instructive. There, the Appellate Division, First Department affirmed summary judgment for the defendant because the plaintiff failed to demonstrate that he was paid less well than similarly situated colleagues for discriminatory reasons., 98 AD3d at 121. So too here, Plaintiff's belief that she was paid less than Bogutska is false and there is no other evidence of any germane pay disparity or any basis to contend that Lukoil set Plaintiff's compensation at an inappropriate level and refused to raise it for discriminatory reasons. Lukoil has explained that it researched the issue of her compensation when she raised it, and there are no facts in the record that even arguably suggest that discriminatory animus lay behind Lukoil's decisions.

 Beyond that, Plaintiff has no evidence to speak of that establishes that she was treated less favorably than employees of Russian descent.  First, Plaintiff does not point to any discriminatory statements or biased comments directed toward herself or other non-Russians. Pl. Tr. at 201:5-8. Plaintiff's allegations that she was "treated like a pariah" are quintessential examples of the "unadorned, the-defendant-unlawfully-harmed-me accusations," that cannot state a claim of discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, at her deposition, Plaintiff expressly stated the following:

> Q: Did you feel like you had a good relationship with
>    Simon?
>
> A: At first.
>
> Q: What about Mr. Rodilosso and Mr. Reynolds?
>
> A: Yes.

Pl. Dep. at 61:9-14.  Plaintiff's collegial relationship with each of her supervisors, including Fenner, highlights the absence of any discriminatory conduct by Lukoil. *See Dachman v. Shalala*, 9 Fed. Appx. 186, 189 (4th Cir. Apr. 6, 2001) (because plaintiff initially had collegial relations with supervisors, who knew of her membership in a protected class, the later deterioration in those relations could not have been based on her membership in that class).

Of course, it need only be added that the vast majority of Lukoil's workforce is non-Russian. Indeed, during the time of her employment, of the 48 employees of Lukoil, only 2 held Russian passports – Ruzanna Zaziyants and Anastasia Bagin-Borzilov.[5] Fenner Dec. ¶ 14.  In addition to Bogutska, who is Ukrainian, none of the three Managing Directors to whom Plaintiff reported during her tenure at Lukoil are of Russian descent – Fenner is British, while James Reynolds and Thomas Rodilosso are both American.  Tim Bullock, the sole member of the Lukoil Board of Directors during Plaintiff's employment, is British. Plaintiff herself was replaced by Monique Charles, who is American.  The composition of Lukoil's workforce is itself an unequivocal rejection of Plaintiff's national origin discrimination allegations.  Plaintiff simply cannot establish that similarly situated employees outside of her protected category were treated better, particularly when Lukoil's highest ranking senior executives and the vast majority of employees are non-Russian. A disparate treatment claim can be established by showing that an employed treated plaintiff less favorably than a similarly situated employee outside her protected group. *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir. 1999); *Concepcion v. City of New York*, No. 15-CV-2156 (AJP), 2016 U.S. Dist. LEXIS 11352, *32 (S.D.N.Y. Jan. 29, 2016). Plaintiff has no such evidence. Nor can she identify any statistical evidence supporting her baseless contentions. *Hawkins v. Astor Home for Children*, No. 96-CV-8778 (SS), 1998 U.S. Dist. LEXIS 3599, *16 (S.D.N.Y. March 23, 1998) (an inference of

---

[5] Lukoil does not maintain data on the national origins of its employees.

discrimination may be established "by a statistical showing that a pattern of employment practices affect members of a protected class in a disparate manner").  Plaintiff cannot muster any statistics or other evidence to support her claim.

Plaintiff also cannot identify any discriminatory comments directed at their protected class or by comparing themselves to similarly situated individuals who were not members of the protected class who were treated more favorably. *E.g.,; Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir. 1996). The summary judgment record is devoid of any evidence that fits within those parameters. There is no evidence of discriminatory comments; even Plaintiff herself concedes that she did not hear any such comments against people who were not of Russian descent. *See* Pl. Tr. at 201:5-8.

### iii.    Lukoil's Legitimate, Nondiscriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff succeeded in establishing a *prima facie* case of discrimination, the burden of production shifts to Defendants to rebut that presumption by merely "articulat[ing] a legitimate, nondiscriminatory reason" for the action taken against her. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Here, even assuming that Plaintiff's allegation that she was paid less than Bogutska was accurate, which it patently is not, or that her compensation level was somehow inappropriate, there is a legitimate, nondiscriminatory reason for Plaintiff's salary.  In response to Plaintiff's request for a raise in September 2014, Fenner reviewed Plaintiff's salary in conjunction with current market metrics based on the benchmarking data from Lukoil's third party expert.  Fenner Dec. ¶ 12.  The benchmarking data established that Plaintiff was paid appropriately. In fact, Lukoil legitimately concluded that Plaintiff's salary was "above the upper bound for [Plaintiff's] role" as Executive Assistant.  Exhibit I at 1; 56.1 ¶ 45.

Under the *McDonnell Douglas* framework, because Defendants have squarely met their burden to articulate the legitimate reason for discharging Plaintiff, a heavy burden falls to her to

prove that the stated reason was a pretext for discrimination. *See generally, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d Cir. 1994) ("Some evidence is not sufficient to withstand a properly supported motion for summary judgment . . ."). Plaintiff cannot meet her burden. There is no evidence whatsoever that Plaintiff's national origin played any factor in her compensation or other treatment at work or that Lukoil's proffered legitimate grounds for how it treated her are false and are pretexts for discrimination.

While legitimate "evidence of disparate treatment might have tended to prove pretext," Plaintiff cannot muster any such evidence as to any proper comparator as demonstrated above. *Elmenayer v. ABF Freight Systems, Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) (affirming dismissal of disparate treatment claim based on*, inter alia,* failure to show pretext). Since Plaintiff has no evidence that gives rise to a genuine issue of material fact, summary judgment must be granted on her NYSHRL discrimination claim.

Plaintiff did not plead a hostile work environment claim. Even if she had, the record demonstrates that she cannot raise a genuine fact issue as to hostile environment. A defendant violates the NYSHRL's prohibition on hostile work environments when its conduct is sufficiently severe or pervasive that a reasonable person would find the work environment hostile or abusive, it creates an environment that the plaintiff subjectively perceives as hostile or abusive and it creates such an environment because of the plaintiff's protected characteristic. *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007). However, the law does not create "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs. Inc.,* 523 U.S. 75, 80 (1998). To survive summary judgment, the plaintiff must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510

U.S. 17, 21 (1993). "Isolated incidents generally will not suffice to establish a hostile work environment unless they are extraordinarily severe." *Kaytor,* 609 F.3d at 537; *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 310 (2004).

Plaintiff has identified no offensive comments at all. Nor has she identified any other conduct to which she was subjected that could support the contention that she was subjected to severe or pervasive discriminatory harassment. In short, she cannot raise a genuine issue of fact even if she were to advance this unpleaded theory of liability.

**B.     Plaintiff's NYCHRL National Origin Discrimination Claim Fails**

Under the NYCHRL, Plaintiff has to prove that, based on her national origin, she was treated less favorably than persons not in her protected class. *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 35 (1st Dep't. 2009).  The *McDonnell Douglas* burden shifting test applies to NYCHRL claims at the summary judgment stage.  *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.2010).

Accordingly, dismissal is also required as to Plaintiff's NYCHRL discrimination claim. Even the liberal construction afforded pursuant to the NYCHRL cannot salvage a claim that is not supported by the evidence.  Given the factual record, any determination by a jury that Plaintiff was subjected to poor treatment because she is not Russian would be conjectural at best. Because such conjecture and speculation cannot create a genuine issue of fact under any applicable law, dismissal is warranted. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Plaintiff cannot raise a material fact question as she has no evidence that discriminatory animus played any role in the challenged decision. *Wolf v. Time Warner, Inc.,* 548 F. App'x 693, 696 (2d Cir. 2013) (affirming summary judgment dismissing NYCHRL claim).

Plaintiff also cannot prove a hostile environment under the NYCHRL for the same reasons as stated above.

## II. PLAINTIFF CANNOT RAISE A GENUINE ISSUE OF FACT WITH RESPECT TO HER RETALIATION CLAIMS

Amended Complaint Counts Five, Six, Nine and Ten allege that Defendants retaliated against Plaintiff based on alleged complaints to her supervisor and to human resources regarding both unpaid overtime and an alleged difference in treatment between Russian and non-Russian employees. To establish a *prima facie* case of retaliation, Plaintiff must establish: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) the employee suffered a materially adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). The *McDonnell Douglas* burden shifting framework applies to retaliation claims brought under State and City law as well as the FLSA. *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (*per curiam*); *Goodman v. Port Auth. of N.Y. & N.J.*, 2013 U.S. Dist. LEXIS 134921, *21 (S.D.N.Y. Sept. 18, 2013) ("FLSA retaliation claims are subject to the three-step burden shifting framework . . ."). With respect to the NYCHRL, "the elements of retaliation are identical except that the plaintiff need not prove any 'adverse employment action'; instead, he must prove that something happened 'that would be reasonably likely to deter a person from engaging in protected activity.'" *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (citation omitted).

Once again, Plaintiff cannot prove her retaliation claims because she cannot establish several critical elements. Accordingly, the Court should grant summary judgment.

### A. Plaintiff Did Not Engage In Protected Activity

#### i. Purported National Origin Discrimination Complaint

As an initial matter, the evidence does not support Plaintiff's claims that she complained about national origin discrimination.  At her deposition, Plaintiff claimed that she made an "official complaint" regarding national origin discrimination to Simon Fenner and Jennifer Diehl during their September 2014 meeting.  At that meeting, Plaintiff testified that she had "a conversation with Simon Fenner and Jennifer Diehl regarding my compensation and general treatment."  Pl. Dep. at 106:4-8.  Specifically, Plaintiff testified:

> At that meeting, I let them know that [Plaintiff] thought [Plaintiff] was being treated unfairly … and that I believe it was unfair that Inga was compensated more.

Pl. Dep. at 107:2-8.

Fatally for Plaintiff's retaliation claim, her own contemporaneous account of that meeting tells a different story.  By email, dated September 30, 2014, Plaintiff wrote to Fenner and Diehl "in summation of our recent meeting," where she recounts a conversation focused heavily on her compensation and role.  Exhibit H.  During that meeting, Plaintiff was particularly concerned with her base salary, a potential raise, the size of her discretionary bonus, and whether her role in the organization would continue to expand.  *Id.*  Conspicuous by its absence, however, is any mention whatsoever of an alleged difference in treatment between Russian and non-Russian employees, or Bogutska at all. This is unsurprising; Plaintiff does not mention being treated less favorably than Russian employees because she never raised the issue at her meeting with Fenner and Diehl, reflecting that she did not then believe or contend that Lukoil favored Russian employees.  Without such a complaint, Plaintiff did not engage in protected activity, and, thus, her NYSHRL retaliation claim must be dismissed. *See McKenzie v. Estee Lauder Cos.*, No. 09-CV-606 (SJF) (WDW), 2010 U.S. Dist. LEXIS 115871, *25-26 (E.D.N.Y. Sept. 22, 2010) (summary judgment granted on retaliation claim where plaintiff did not engage in protected activity).

It need only be added that this claim also fails because Plaintiff cannot show any damages.

Obviously, she was paid more than Bogutska. There is no evidence she was paid less or treated less well than any comparators who did not complain, and she voluntarily left her employment at Lukoil for a position that paid her substantially more money.

### ii.   Purported FLSA Misclassification Complaint

Moreover, although Plaintiff obviously discussed her salary and role during the September 2014 meeting, that discussion does not qualify as protected activity under the FLSA. To pursue a claim under the anti-retaliation provisions of the FLSA, an employee's complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011); *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015). Plaintiff's purported complaint was anything but clear.

Once again, Plaintiff's September 30, 2014 summation email tells the story. During the meeting, Plaintiff mentioned her exempt status, noting that she would "remain an exempt employee." Exhibit H. That conversation continued through October. By email, dated October 21, 2014, Plaintiff sought further clarification regarding her compensation. Exhibit I at 2. Eight days later, on October 29, Fenner responds and commits to "work with Jenn [Diehl] to determine if [Plaintiff] should be a non-exempt employee." Exhibit I at 2.

By November, however, Plaintiff has changed her tune, muddying the waters significantly. On November 1, 2014, despite Fenner's agreement to review her exempt status, Plaintiff notes that the "exempt vs. non concept is not an angle [Plaintiff] wish[es] to pursue due to the nature of the business and your concept of flexibility and quality of life work balance." Exhibit I at 1. Within the span of one month, Plaintiff had raised the issue of her exemption and then advised Lukoil that she did not wish to pursue it. In no way does Plaintiff's shifting position on the issue provide sufficient

clarity and detail for Fenner or Diehl to have understood that Plaintiff was complaining about her exempt status as a violation of the wage and hour laws.  In fact, by the end of the conversation, Plaintiff is not complaining at all, but rather has elected "not to pursue" any change in her status.

Plaintiff's hemming and hawing does not qualify as protected activity under the FLSA's anti-retaliation provision.  Accordingly, summary judgment must be granted.

###     B.     Plaintiff Did Not Suffer an Adverse Action

Even assuming that Plaintiff did engage in protected activity, none of the behavior Plaintiff identifies as retaliatory qualifies as a materially adverse change to the terms and conditions of her employment. At her deposition, Plaintiff testified as follows:

> Q: Okay. What retaliation are you claiming occurred?
>
> A: I was removed from projects.
>
> Q: What else?
>
> A: I was paid less.
>
> Q: You were paid less?
>
> A: Than Inga.
>
> Q: You believe that occurred in retaliation to you complaining?
>
> A: I don't know.
>
> Q: What else?
>
> A: Not being included on planning conversations, being delegated more work.
>
> Q: More work than who?
>
> A: More work than Inga.
>
> Q: What else?
>
> A: That's all I can think of right now.

Pl. Dep. 196:17-25, 197:1-10.

Taken one by one, none of the above alleged actions taken against Plaintiff are even arguably sufficiently adverse to be actionable. For instance, Plaintiff claims that Lukoil retaliated against her by paying her less than Bogutska. As demonstrated above, Plaintiff was actually paid more than Bogutska, despite her purported concerns.

Additionally, when pressed at her deposition, Plaintiff was unable to identify any meetings or "planning conversations" from which she was excluded:

> Q: What meetings and planning conversations were you excluded from?
>
> A: I don't know. I wasn't invited.
>
> Q: If you don't know, then how do you know you were excluded?
>
> A: Conference rooms have glass windows and there were meetings to which I believe I would have been invited in the past regarding administration.
>
> Q: How do you know they were about administration?
>
> A: I guess, I don't know a hundred percent because I wasn't there.

Pl. Dep. at 199:3-20.

Plaintiff somehow concludes she was excluded from meetings despite having no knowledge about any alleged meetings. Speculation "is not evidence". *Weber v. City of New York*, 973 F. Supp. 2d. 227, 240 n.5 (E.D.N.Y. Sept. 29, 2013); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment").

Plaintiff somehow manages to complain that she was "removed from HR projects" while simultaneously complaining that she had been "delegated more work." Pl. Dep. 197:4-24. Either

way, neither of these complaints is actionable because they did not give rise to a materially adverse change in the terms and conditions of Plaintiff's employment. *Kittrell v. City of New York,* No. 10-CV-2606, 2013 U.S. Dist. LEXIS 77101, at *54 (E.D.N.Y. Mar. 14, 2013), *adopted and summary judgment granted*, 2013 U.S. Dist. LEXIS 76914 (May 18, 2013), *aff'd,* 561 Fed. Appx. 30 (2d Cir. 2014) (reduction in workload held not to be adverse even though it reduced plaintiff's opportunity to earn overtime). *Cf. Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp.2d 396, 406-407 (S.D.N.Y. 2014) (receipt of undesirable assignments, without more, is a mere inconvenience).

Again, Plaintiff was neither demoted nor terminated during her tenure with Lukoil.  Her salary was never reduced, she was granted a substantial discretionary bonus, and she received Profit Sharing Plan distributions as soon as she was eligible.  Fundamentally, Plaintiff did not suffer any adverse action.  Instead, she left of her own accord, resigning from Lukoil to take a higher paying position elsewhere.  As a result, she cannot prove the essential element of any retaliation claim – that her employer took adverse action against her in reprisal for her protected conduct. Plaintiff's failure to establish this critical element is fatal to her retaliation claims.

Plaintiff apparently will contend that she was constructively discharged, which would be an adverse action or a substitute therefor. She did not plead constructive discharge, and cannot raise a genuine issue of fact as to any such claim. "Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 725 (2d Cir. 2010) (internal quotations omitted). This standard is higher than that for a hostile work environment, and requires the employee to show deliberate action by the employer rather than mere negligence or ineffectiveness. *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 74 (2d Cir. 2000). Plaintiff cannot raise an issue of fact as to intolerable working

conditions since none were present, particularly since she never even complained internally. *Victory v. Hewlett-Packard Co.,* 34 F. Supp. 2d 809, 826 (E.D.N.Y. 1999). Plaintiff can identify no deliberate employer conduct and resignation was not Plaintiff's only option to deal with any alleged discriminatory conduct she might have found offensive.

## III.   LITASCO IS NOT SUBJECT TO JOINT EMPLOYER LIABILITY

Parent companies are "not ordinarily liable for the employment discrimination of its subsidiary." *Fenner v. News Corp.*, No. 09-CV-09832 (LGS), 2013 U.S. Dist. LEXIS 170187, *23 (S.D.N.Y. Dec. 2, 2013).  This is in keeping with the "strong presumption that a parent is not the employer of its subsidiary's employees."  *Id.* at *24. "Just as the law only pierces the veil of a corporate entity under extraordinary circumstances," the law also only imputes joint employer liability on a parent under extraordinary circumstances.. *Id.* at *24-25.  Nor are parents ordinarily liable for their subsidiary's wage and hour violations.

The exception to this rule is the single employer doctrine, under which the Court examines "whether a parent and subsidiary are so integrated that in effect they are acting as one with respect to Plaintiff's employment." *Fenner v. News Corp.*, 2013 U.S. Dist. LEXIS 170187, at *24. In order to determine parent liability, a Court reviews the relationship between the parent and subsidiary based on four factors – (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; (4) common ownership or financial control. *Velez v. Novartis Pharms. Corp.*, 244 F.R.D. 243, 250 (S.D.N.Y. 2007).  This test "may be satisfied 'by a showing that there is an amount of participation that is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Id.* Similarly, under the FLSA, the the general approach used by the courts is pursuant to the totality-of-the-circumstances test applied in *Rutherford Food Corp. v. McComb,* 331 U.S. 722 (1947) ("[T]he determination of the relationship

does not depend on . . . isolated factors but rather upon the circumstances of the whole activity"). *See also Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir. 2003) (functional control can provide a basis for FLSA liability).

Here, Plaintiff cannot raise a genuine issue of fact as to Litasco's liability since it is clear that Litasco and Lukoil are entirely separate entities and that Litasco is not "necessary to the total employment process" of Lukoil employees. Importantly, Lukoil and Litasco are separate legal entities. 56.1, ¶ 66. While Lukoil is a wholly-owned subsidiary of Litasco, The two companies do not share accounts or personnel, and the corporate formalities between the two entities are observed. *Id.* ¶ 67. The companies operate in separate countries, out of separate offices, with separate staff performing company-specific roles. *Id.* For instance, Lukoil and Litasco each maintain separate human resources departments to handle employee issues that arise in each respective company. *Id.*, ¶ 68. Glory Perazzo is the Lukoil Human Resources Generalist and reports to Fenner. *Id.* Prior to her employment, Lukoil utilized the services of an outside human resources contractor, Jennifer Diehl, who did not provide those services to Litasco. *Id.* In contrast, Litasco's human resources department is run by Irina Akinshina who is located in Geneva. *Id.* These clear lines of demarcation between parent and subsidiary are sufficient to defeat Plaintiff's attempted invocation of the single employer doctrine. *Fenner*, 2013 U.S. Dist. LEXIS 170187 at *25 ("The evidence shows that the Post and News Corp. were distinct entities with distinct business operations. The Post and News Corp. have separate employees, bank accounts, marketing departments, finance departments, computer systems, databases and security").

That said, employees of each business "can maintain some amount of communication with senior employees" of the other "without collapsing corporate formalities." *Id.* *26. As one might imagine, Lukoil team members often have friendly, productive relationships with their Litasco

counterparts and those at other Litasco subsidiaries around the world. Fenner Dec. ¶ 9.  However, Litasco did not manage the day-to-day operations of the subsidiary.  Instead, that job was left to Fenner. *Id.*

Litasco's Chief Executive Officer is the sole member of the Lukoil's Board of Directors, and that Fenner reports directly to him in the role of Managing Director.  Plaintiff will likely contend that these dual roles and reporting structure demonstrates common management between the two companies and, thus, creates an issue of fact as to whether Lukoil and Litasco are a single integrated employer.  Such an argument must fail, as it is presumed that "corporate personalities remain distinct" even when a director or officer holds separate positions with a subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998).  Additionally, Fenner reporting directly to Litasco's CEO "does not exceed the control normally exercised by a parent" that would pierce the presumption of protection afforded to the parent-subsidiary relationship. *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 347 (S.D.N.Y. 1997). There is no basis in the summary judgment record to find that Litasco controlled the employment terms and conditions of Lukoil's employees, including Plaintiff, functionally or otherwise.

In short, despite Plaintiff's claims, it is clear that Lukoil and Litasco are operating different businesses in different countries, but have a common parent-subsidiary relationship.  Accordingly, Litasco cannot be considered Plaintiff's employer under any conceivably applicable test, and the Court should dismissed it from the case entirely.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Defendants'

motion and dismiss Plaintiff's discrimination and retaliation claims and all claims against Litasco

with prejudice.

Dated:   New York, New York
         March 8, 2019

                                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**

                                        By: /s/ Peter T. Shapiro
                                                Peter T. Shapiro, Esq.
                                                Adam E. Collyer, Esq.
                                                *Attorneys for Defendants*
                                                77 Water Street, Suite 2100
                                                New York, NY 10005
                                                212-232-1300
                                                Peter.Shapiro@lewisbrisbois.com
                                                Adam.Collyer@lewisbrisbois.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the within Memorandum of Law upon the attorney for plaintiff and filed same via ECF on March 8, 2019.


                                        /s/ Adam E. Collyer
                                        Adam E. Collyer