UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KRISTIN BENZINGER,

                       Plaintiff,              Case No. 16-cv-8533 (PAE)

      - against -

LUKOIL PAN AMERICAS, LLC.

                       Defendant.
----------------------------------------------------------X


# DEFENDANT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS PRE-TRIAL MOTIONS *IN LIMINE*


                                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                                        Peter T. Shapiro, Esq.
                                        Adam E. Collyer, Esq.
                                        *Attorneys for Defendants*
                                        77 Water Street, Suite 2100
                                        New York, New York  10005
                                        212-232-1300
                                        Peter.Shapiro@lewisbrisbois.com
                                        Adam.Collyer@lewisbrisbois.com

**PRELIMINARY STATEMENT**

Defendant Lukoil Pan Americas, LLC ("LPA" or "Defendant"), by its attorneys Lewis Brisbois Bisgaard & Smith LLP, respectfully submits this memorandum of law in support of its pre-trial motions *in limine*.[1]

**ARGUMENT**

I.  **PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING TESTIMONY AND EVIDENCE THAT WOULD BE GERMANE TO THE CLAIMS THAT NO LONGER EXIST**

   A. **The Claims Dismissed on Summary Judgment**

On March 8, 2019, Defendant moved for partial summary judgment on Plaintiff's discrimination and retaliation claims. *See* ECF Docket Entry Nos. 69 through 72. Specifically, Defendants argued that Plaintiff was unable to raise a genuine dispute of material fact with respect to her national origin discrimination claims under the New York State and City Human Rights Laws (the "NYSHRL" and "NYCHRL", respectively) and her retaliation claims under the NYSHRL, NYCHRL, the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL"). *See, generally, id.*

By Order, dated March 20, 2020 (the "Order" [DE 89]), the Court granted Defendant's motion with respect to Plaintiff's national origin discrimination and retaliation claims under the NYSHRL and NYCHRL. Plaintiff's FLSA and NYLL retaliation claims survived summary judgment.

According to Rule 402 of the Federal Rules of Evidence, "[i]rrelevant evidence is not admissible." Evidence is relevant, in accordance with Rule 401(b), if "the fact is of consequence in

---

[1] Defendant respectfully requests that the Court amend the caption to reflect that Plaintiff is not proceeding on a class or collective basis, and that Litasco SA was dismissed as a defendant.

determining the action." Claims for relief that have been disposed, and evidence related to those claims, are clearly not of consequence because they have no bearing on the factfinder's ultimate determination as to the remaining claims. *Hamza v. Saks Fifth Ave., Inc.*, No. 07-CV-5974, 2011 U.S. Dist. LEXIS 139132, *7 (S.D.N.Y. Dec. 5, 2011) (granting motion *in limine* to exclude evidence of claim dismissed by the court prior to trial as such evidence would be irrelevant, citing Rules 401 and 402); *Gorbea v. Verizon N.Y., Inc.*, No. 11-CV-3758, 2014 U.S. Dist. LEXIS 87295, *5-6 (E.D.N.Y. June 25, 2014) ("The previously dismissed claims, and evidence thereof, are not 'of consequence in determining the action' and therefore will be excluded").

Moreover, even assuming that the evidence Plaintiff would offer related to her failed claims might be somehow vaguely relevant to the issues here, the virtually non-existent probative value of any such evidence would be substantially outweighed by the danger of jury confusion since the claims remaining for trial all deal with the payment of wages rather than discrimination, and time would be wasted by diverting the trial into issues that have already been resolved. Thus, permitting Plaintiff to introduce evidence and testimony pertaining to a dismissed claim for relief would unfairly prejudice Defendant in violation of Rule 403 as well.

**B. Any Reference to Lukoil's Foreign Parent Should Be Excluded**

In the same vein, Plaintiff should be excluded from making any reference to dismissed defendant Litasco SA, LPA's direct foreign parent, or to the PJSC Lukoil Oil Company, the Moscow-based energy company that is parent to both organizations. As with the references to dismissed claims as discussed above, referencing a former defendant and the international scope of LPA's corporate parents would violate Rule 402's admonition to exclude irrelevant evidence. The evidence has no bearing on the factfinder's ultimate determination as to the claims remaining in this case.

Because the Court's decision granting Defendants' summary judgment motion in part [DE 89] dismissed the NYSHRL and NYCHRL claims as to LPA and dismissed all claims against Litasco SA , neither Plaintiff's national origin nor the location of LPA or its related organizations is relevant to the claims to be tried. As such, any reference during testimony or through documentary evidence would violate Rule 403, as it would conflate LPA, a Delaware limited liability company, with two foreign organizations, resulting in a substantial risk of jury confusion that would prejudice LPA. This is especially true with respect to references to the Lukoil entity in Russia, given that foreign nation's well known political disputes with the United States, of which the Court can take judicial notice. Plaintiff concedes that this is the case and has been for some time, as she stated on her application for her current role at Columbia University that she was "proactively seeking a new opportunity" due to "an uncertain political climate and sanctions against Russia." *See* Application for Employment, dated February 16, 2015, attached hereto as Exhibit A, at 2.

Accordingly, the Court should grant Defendant's motion *in limine* to exclude all testimony and evidence related to the dismissed claims.

## II. ALL REFERENCES TO LPA'S PRE-LITIGATION ATTEMPTS TO RESOLVE PLAINTIFF'S DISPUTE SHOULD BE PRECLUDED

In the proposed Joint Pretrial Order ("JPTO"), Plaintiff seeks to introduce five exhibits related to Defendant's pre-litigation attempts to resolve the dispute over Plaintiff's exempt classification. *See* Plaintiff's Proposed Exhibits 5 through 9; Proposed JPTO, Section XI, copies of which are annexed hereto as Exhibit B. Specifically, Plaintiff attempts to introduce as evidence multiple spreadsheets created by LPA regarding potential overtime calculations, as well as an email sent to her from LPA executive Simon Fenner that includes a proposed settlement agreement. *Id*. These documents, and any testimonial reference to them, must be precluded in accordance with Rule 408 of the Federal Rules of Evidence.

"In furtherance of the public policy of encouraging settlements and avoiding wasteful litigations, Rule 408 bars the admission of most evidence of offers of compromise and settlement." *Trebor Sportswear Co. Inc. v. Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989). The rule also precludes evidence of offers made before the initiation of litigation. *IBM v. BGC Partners, Inc.*, No. 10-CV-128, 2013 U.S. Dist. LEXIS 59779, *27 (S.D.N.Y. April 25, 2013). While "[i]t is often difficult to determine whether an offer is made 'in comprising or attempting to compromise a claim,'" courts look to "[b]oth the timing of the offer and the existence of a disputed claim" as relevant to their determinations. *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992).

Here, it is uncontested that Plaintiff's misclassification and assertion that she was entitled to overtime were in dispute at the time of these discussions and offers. By email, dated September 30, 2014, Plaintiff recounted a meeting she had with LPA's Simon Fenner and Jennifer Diehl related to her salary and role with the company. During that meeting, Plaintiff raised the idea that she was a non-exempt employee, which is reflected in her email correspondence. *See* email correspondence from Plaintiff, dated September 30, 2015, which is attached as Exhibit C. By email, dated October 29, 2014, Fenner responded to Plaintiff and advised that he would "work with [Diehl] to determine if [Plaintiff] should be a non-exempt employee." *See* email correspondence from Mr. Fenner, dated October 29, 2014, which is attached as Exhibit D.

Less than three months later, Plaintiff gave verbal notice of her resignation. During that conversation, Plaintiff "made it clear" that "she had been misclassified under the FLSA and that [LPA] owed her money." *See* excerpts from Mr. Fenner's deposition, taken September 26, 2018, which are attached as Exhibit E, at 74. In the interim, between her verbal notice and her last day at LPA in February 2015, Mr. Fenner calculated "good faith estimates of something that could be the basis for an amicable settlement." *Id.* He prepared spreadsheets estimating "the possible overtime

anyone could have worked during [the dates of Plaintiff's employment], if they had been a nonexempt employee." *Id.* at 76. Fenner showed the documents to Plaintiff. *Id.* at 77.

Thereafter, on February 3, 2015, Mr. Fenner emailed Plaintiff, copying Clara Ohr, LPA's chief legal counsel, Diehl, LPA's human resources consultant, and Irina Akinshina of Litasco SA. *See* Mr. Fenner's email correspondence, dated February 3, 2015, attached as Exhibit F. In that email, Mr. Fenner provides,

> a proposed draft **Settlement Agreement** between [LPA] and [Plaintiff] that reflects the numbers proposed to [Plaintiff] in the attached spreadsheet I e-mailed to you last Wednesday. While we believe that we have credible support for the position that you are, in fact, an exempt employee under New York State labor laws, **we are proposing this settlement** in the interests of progressing a reasonable and expedient solution for both sides.

*Id.* (emphasis supplied).

Mr. Fenner followed up his February 3, 2015 email with another email on February 6. *Id.*

Plaintiff seeks admission of these spreadsheets, the February 2015 emails, and the proposed settlement agreement to prove LPA's culpability or persuade a jury that LPA's attempts at swift and reasonable resolution of a disputed issue were made because it acknowledged and/or was attempting to conceal its wrongdoing. This is exactly the situation that Rule 408 is designed to prevent. Plaintiff's misclassification claims should be tried on their merits and the Court should not risk tainting the jury's opinion after hearing the relevant evidence with an offer of compromise. Accordingly, this evidence, and the referenced exhibits, should be excluded.

### III.  PLAINTIFF CANNOT ESTABLISH LOST WAGES ON HER FLSA OR NYLL RETALIATION CLAIMS

Plaintiff's Amended Complaint seeks an unspecific amount of "compensatory damages that Plaintiff has sustained as a result of [LPA's] unlawful retaliatory … conduct." *See* Amended

Complaint, Prayer for Relief, Section (g). However, Plaintiff must "sufficiently establish [her] entitlement to any damages," and the record evidence does not permit her to do so. *Chowdhury v. Hamza Express Food Corp.*, No. 14-CV-150 (JBW), 2015 U.S. Dist. LEXIS 125166, *19 (E.D.N.Y. Aug. 21, 2015).

"An employer who violates the anti-retaliation provision of the FLSA 'shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the provision], including … the payment of wages lost." *Id.* at *18. The NYLL "provide[s] for nearly identical relief." *Nana v. Le Viking, LLC*, No. 17-CV-928 (CM) (OTW), 2019 U.S. Dist. LEXIS 120842, *11 (S.D.N.Y. July 19, 2019). Here, however, Plaintiff cannot establish any entitlement to "the payment of lost wages," as her retaliation claim is unrelated to her ultimate voluntary exit from LPA's employment. After summary judgment, Plaintiff's FLSA and NYLL retaliation claims are solely focused on whether her alleged removal from human resources projects was motivated by her purported misclassification complaint. *See* ECF Docket Entry No. 89 at 42. To be clear, Plaintiff has no claim that LPA terminated her employment in retaliation for a misclassification complaint. In fact, it is undisputed that Plaintiff voluntarily resigned her position on January 20, 2015 after accepting employment with Columbia University, and officially left LPA on February 3, 2015. *Id.* at 9.[2] Because the remaining retaliation claims bear no relation to her resignation, Plaintiff cannot establish a causal connection between her retaliation claims and her demand for lost wages. Thus, she should be precluded from seeking those damages at trial.

Even if Plaintiff could somehow connect her retaliation claims to her damages, which she cannot, she still should be precluded from seeking these damages from the jury. The maximum amount Plaintiff could ever recover in lost wages is approximately one month's pay, as she provided

---

[2] Plaintiff does not claim constructive discharge.

sworn testimony that there was "about or less" than a month's time between her last day with LPA and her first day with Columbia. *See* excerpts from Plaintiff's Deposition, taken July 30, 2018, which are attached as Exhibit G, at 62-63.

Plaintiff, however, is obligated to mitigate her damages. *See Azkour v. Little Rest Twelve*, No. 10-CV-4132 (RJS), U.S. Dist. LEXIS 18141, *23 (S.D.N.Y. Feb. 11, 2015) (citing *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997)). Although her voluntarily resignation "does not necessarily preclude her from receiving post-resignation backpay, she is not entitled to this remedy if she failed to mitigate damages." *EEOC v. Bloomberg L.P.*, 29 F.Supp. 3d 334, 342 (S.D.N.Y. 2014). Plaintiff could have mitigated her damages by continuing her employment with LPA until she started her position with Columbia. Her refusal to do so and her action to instead "take the situation into her own hands … by voluntarily resigning … undermine[s] the goal of anti-discrimination law of encouraging employees to address discriminatory conduct from within the employment relationship while ensuring that the employees do not suffer further damage as a result of remaining within that relationship." *Id.*, (citing *Tse v. UBS Fin. Servs.*, 568 F. Supp.2d 274, 303 (S.D.N.Y. 2008)).

As the Honorable Loretta A. Preska ruled in *EEOC v. Bloomberg*, there are "certain limited circumstances where it would be unreasonable to expect a plaintiff to mitigate damages by continuing to work for her employer." *Id.* at 342. Plaintiff, however, does not fit into any of these exceptions. She "was not denied a unique position, and the evidence does not indicate that she faced a permanent obstacle to career advancement." *Id*. at 344. As the Court has already held in this case, Plaintiff cannot prove that LPA discriminated against her on the basis of a protected characteristic under the NYSHRL or the NYCHRL, or that it retaliated against her for engaging in protected activity encompassed by those statutes.

While there may be "understandable reasons why [Plaintiff] would choose to voluntarily resign" from LPA, "the law does not allow her to recover post-resignation backpay." *Id.* at 345. Accordingly, Plaintiff should be precluded from asserting lost wages damages on her FLSA and NYLL retaliation claims.

IV.     **ANY CLAIM FOR PUNITIVE DAMAGES MUST BE EXCLUDED**

Plaintiff also seeks "[p]unitive damages, as provided by law, in connection with Plaintiff's … retaliation claims." *See* Amended Complaint, Prayer for Relief, Section (h). In order to find LPA liable for punitive damages under the FLSA and NYLL, Plaintiff must prove that LPA retaliated "and has done so 'with malice or with reckless indifference to the federal protected rights of an aggrieved individual." *Azkour,* U.S. Dist. LEXIS 18141 at *25. Plaintiff is unable to meet this exacting burden. The record evidence establishes, at a bare minimum, that LPA met with Plaintiff, and discussed her "several requests related to her salary and role with the company" at length in a meeting with its highest level executive and its human resources consultant. *See* Docket Entry No. 89 at 6. The only allegation remaining in this case related to Plaintiff's retaliation claims is that her human resources duties were removed. As this is hardly reckless or malicious conduct, Plaintiff is not able to establish punitive damages and should be barred from mentioning same before the jury.

V.     **IRINA AKINSHINA AND CLARA OHR SHOULD BE PRECLUDED FROM TESTIFYING**

Defendant seeks the preclusion of two witnesses identified by Plaintiff as trial witnesses – Irina Akinshina and Clara Ohr.

Ms. Akinshina is the head of Litasco SA's human resources department and works in Geneva, Switzerland. *See* ECF Docket Entry No. 89 at 12-13. As a non-party who works for a non-party entity, which the Court dismissed as a defendant herein, Akinshina's testimony would undoubtedly confuse the jury and prejudice LPA. *See* Section I(B), *supra.* Moreover, because

Geneva is more than 100 miles from the Southern District's courthouse at 40 Foley Square in Manhattan, Ms. Akinshina is outside of the geographic range of the Court's subpoena power, pursuant to Rule 45(c)(1)(A) of the Federal Rules of Civil Procedure.

Ms. Ohr is also a non-party outside of LPA's control, having left Defendant's employ in July 2017. Additionally, as LPA's chief legal counsel, any potential testimony would be replete with issues related to attorney-client privilege and attorney work product doctrine. We can only speculate as to what she could testify about, as she was not deposed or identified as a witness with relevant knowledge during the discovery phase of the case.

Moreover, Ms. Ohr would not be able to provide any testimony pertinent to Plaintiff's claims.  Ms. Ohr began working for LPA on January 12, 2015, just eight days before Plaintiff gave notice and less than one month before Plaintiff left her position for a new job at Columbia. At her deposition, Plaintiff provided the following sworn testimony:

> **Q:** What about basic admin work for the head of legal?
>
> **A:** Our time did not overlap.
>
> **Q:** Presumably you are referring to Clara Ohr?
>
> **A:** That is correct.

*See* Exhibit G at 183.

In fact, the only trial exhibit offered by any party that features Ms. Ohr is the February 6, 2015 email correspondence from Mr. Fenner to Plaintiff regarding the "Settlement Agreement [LPA] presented to [Plaintiff]." *See* Exhibit B. As set forth above, this proposed exhibit (Plaintiff's Exhibit 17) must be excluded by Rule 408. *See* Section 2, *supra*.  Even if the Court were to permit the exhibit to be used, any testimony from the in-house attorney about it would not be required and it is

certain that any discussions between attorney and client about Plaintiff's severance would be privileged.

Ms. Ohr's testimony is not remotely relevant to the claims remaining in this case. Plaintiff concedes that their respective employment with LPA "did not overlap," Plaintiff did not seek to depose her, and the only document Plaintiff points to in her proposed exhibit list is an email that was sent by Mr. Fenner, another trial witness, to Plaintiff directly. Ms. Ohr was merely copied on the exchange and does not participate in the email chain in any way between February 3 and February 7, 2015. *See* Exhibit C.

It appears that Plaintiff seeks Ms. Ohr's testimony not for any probative value, but rather to be able to suggest that LPA had to involve a lawyer relating to Plaintiff's alleged misclassification claims. Given the privilege, whether misclassification was ever discussed with in-house counsel would not a permissible subject for testimony. Moreover, since Ms. Ohr joined LPA only at the very end of Plaintiff's tenure, it is evident that she was not involved with and cannot provide any testimony about any consideration by LPA of whether Plaintiff was properly classified as an exempt employee. Once again, the non-existent probative value of any such evidence would be substantially outweighed by the danger of jury confusion and prejudice to LPA.

In sum, neither of these witnesses should be permitted to testify.

### VI. PLAINTIFF'S RECORDS FROM HER JOB SEARCH ARE ADMISSIBLE

Finally, LPA seeks to admit documents related to Plaintiff's job search while she was still employed by LPA, including December 2014 and January 2015 documents produced by Columbia University in response to a subpoena. Specifically, Defendant seeks to utilize Plaintiff's job application to Columbia, the resume and personal statement she submitted alongside that application, email correspondence between Plaintiff and Columbia employees during the interview and offer

process, and her January 22, 2015 offer letter from Stephen T. Hands. *See* Defendant's Exhibits B, C, D, H, and I, which are collectively annexed hereto as Exhibit H. Defendant also seeks admission of email correspondence between Plaintiff and another company to which she applied for employment, Riot Games, between January 6 and January 16, 2015. *See* email correspondence between Plaintiff and Riot Games, dated January 6 through 16, 2015, which is annexed hereto as Exhibit I. Plaintiff objects to these proposed exhibits as irrelevant, arguing that the correspondence is hearsay, and challenging the authenticity of the Columbia documents that she herself authored and submitted. *See* Proposed Joint Pretrial Order, Section XIII.

      The Court should overrule all of Plaintiff's objections and admit each of these exhibits. First, these exhibits are germane relevant to Plaintiff's retaliation claims. Plaintiff asserts that she left LPA after LPA retaliated against her for allegedly complaining about being misclassified. LPA needs these records to establish that Plaintiff did not leave LPA due to LPA's allegedly retaliatory conduct, but rather that she left for a better professional opportunity. As the Court's March 20, 2020 Opinion and Order [DE 89] described the circumstances, she sought alternative employment "in line with the salary she had sought during her September 2014 meeting with [Simon] Fenner and [Jennifer] Diehl." *See* ECF Docket Entry No. 89 at 9.

      Moreover, the emails to which Plaintiff objects are not hearsay. Hearsay is an out-of-court statement made by a declarant to prove the truth of the matter asserted. *See* Rule 801 of the Federal Rules of Evidence ("FRE"). However, these emails contain statements by Plaintiff, a party, and, as such, are **not** hearsay within the definition set forth in FRE 801(d)(2). Moreover, these matters are not being offered for the truth of the communications themselves, but rather should be admitted as reflecting Plaintiff's state of mind during her job search.

Finally, the authenticity of the Columbia University documents is not in question, and Plaintiff's purported objection should be given short shrift. LPA received these documents only after Plaintiff's deposition and, thereafter, deposed Plaintiff's supervisor at Columbia, Carrie Walker, to specifically address the authenticity issue. At her deposition, Ms. Walker confirmed that the documents Columbia produced in response to LPA's subpoena were submitted by Plaintiff during the application process, including the resume and the personal statement. *See* excerpts of deposition transcript of Carrie Walker, taken November 9, 2018, annexed hereto as Exhibit J, at 25-33. Plaintiff herself would undoubtedly have no choice but to authenticate the documents at trial if questioned about them. Plaintiff's objection is disingenuous.

Accordingly, these documents should be admitted and Plaintiff's objections overruled.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Defendants' motions *in limine*.

Dated:     New York, New York
           May 15, 2020

                              **LEWIS BRISBOIS BISGAARD & SMITH LLP**


                              By:   /s/ Peter T. Shapiro
                                    Peter T. Shapiro, Esq.
                                    Adam E. Collyer, Esq.
                                    77 Water Street, Suite 2100
                                    New York, New York  10005
                                    212-232-1300
                                    Peter.Shapiro@lewisbrisbois.com
                                    Adam.Collyer@lewisbrisbois.com

## CERTIFICATE OF SERVICE

      Adam E. Collyer, an attorney duly admitted to practice before this Court, certifies that on May 15, 2020, he caused the within memorandum of law to be filed and served upon the attorneys for plaintiffs via ECF.

                                    /s/ Adam E. Collyer
                                        Adam E. Collyer