UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KRISTIN BENZINGER,

                              Plaintiff,                        16 Civ. 8533 (PAE)

                  -v-

LUKOIL PAN AMERICAS, LLC,                            OPINION & ORDER

                              Defendant.

---

PAUL A. ENGELMAYER, District Judge:

Trial in this case, which involves claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA"), and the New York Labor Law, N.Y. Lab. Law § 215 ("NYLL"), is anticipated (subject to public-health and related scheduling considerations) in the third quarter of 2021. This decision resolves the parties' pending motions *in limine*.

**I.    Background**

The Court assumes familiarity with the background of this case, which is set forth in greater detail in its decision on Lukoil's motion for summary judgment. *See Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 108–16 (S.D.N.Y. 2020). The Court here summarizes only the facts necessary for its ruling on the pending motions *in limine*.[1]

Benzinger worked as an executive assistant in Lukoil's New York City office between April 2013 and February 2015, when she left for a higher paying job at Columbia University ("Columbia"). Lukoil, a Delaware LLC, trades in petroleum products and crude oil, and is owned by its swiss parent, Litasco S.A. ("Litasco"). While at Lukoil, Benzinger received a base salary of $85,000 and was also eligible for a discretionary bonus and other benefits, including insurance

---

[1] Unless otherwise noted, all facts come from the Court's summary judgment decision.

plans, a 401(k) plan, and three weeks' paid vacation. She also was eligible to participate in Lukoil's profit-sharing plan after her first year of service at the company.

Benzinger reported directly to Lukoil's managing directors, *i.e.*, the most senior executives at the company. Between April 2013 and July 2014, Lukoil's two managing directors were James Reynolds and Thomas Rodilosso; between July 2014 and Benzinger's February 2015 resignation, Simon Fenner was the sole managing director to whom she reported. As an executive assistant, Benzinger performed "a myriad of tasks for managing directors Rodilosso, Reynolds, and Fenner," including overseeing procurement, information technology, travel, and expenses. *Benzinger*, 447 F. Supp. 3d at 109. She also worked on office remodeling, renegotiated all of Lukoil's office-supplier contracts, upgraded its lunch-ordering program, created a new electronic filing system, and helped obtain visas for foreign workers. In connection with some of that work, Benzinger reported to and was supervised by Litasco's director of human resources, Irina Akinshina.

After Fenner took over as managing director in July 2014, he, Lukoil's human-resources consultant Jennifer Diehl, and Benzinger negotiated as to Benzinger's salary and role at Lukoil. Between then and November 2014, including at a September 29, 2014 meeting, they discussed, *inter alia*, Benzinger's compensation, vacation time, and whether she was an exempt employee under the FLSA and NYLL. Ultimately, Fenner denied Benzinger's request for a raise and for more vacation time. And although he said he would look into whether Benzinger should be classified as a non-exempt employee, she declined, stating that she did not "wish to pursue" that issue because "[c]alculating hours is a waste of time" and she enjoyed "the flexibility and quality of life work balance" permitted by her current arrangement. *Id.* at 112.

Soon after, Benzinger began to seek other employment. In January 2015, she received a job offer from Columbia with a salary in line with what she had requested from Lukoil. Later that month, she accepted that offer and resigned from Lukoil. February 3, 2015, was her last day of work at Lukoil.

On November 2, 2016, Benzinger filed her first complaint in this action. On July 28, 2017, she filed an amended complaint, bringing claims against Lukoil and Litasco under the FLSA, NYLL, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Dkt. 27 ("FAC"). She alleged that both companies had treated her worse than her Russian colleagues, in violation of the NYSHRL and NYCHRL, and failed to pay her overtime wages and provide proper wage statements, in violation of the FLSA and NYLL. She also brought retaliation claims under each statute.

On March 8, 2019, after the close of discovery, Lukoil and Litasco moved for partial summary judgment on all claims under the NYSHRL and NYCHRL, and the retaliation claims under the FLSA and NYLL. They also sought Litasco's dismissal because it had not been Benzinger's employer.

On March 20, 2020, the Court granted that motion in part and denied it in part. The Court dismissed all claims under the NYSHRL and NYCHRL, holding that Benzinger had not established a *prima facie* face of national-origin discrimination or retaliation under either law. The Court also held that Litasco was not Benzinger's employer, and therefore dismissed all claims against it. However, the Court held that Benzinger had adduced sufficient evidence for a jury reasonably to conclude that Lukoil had retaliated against her, in violation of the FLSA and NYLL, for complaining about her alleged misclassification as an exempt employee.

3

On March 31, 2020, the Court directed the parties to submit their required pretrial filings but declined to set a trial date, given the unfolding COVID-19 pandemic. Dkt. 91. On May 15, 2020, after an extension, the parties each filed a motion *in limine*, a memorandum in support, *see* Dkts. 100 ("Pl. Mem."), 102 ("Def. Mem."), and a declaration in support, *see* Dkts. 101 ("Vinci Decl."), 103 ("Collyer Decl."), with exhibits. On June 10, 2020, each party opposed the other party's motion. *See* Dkts. 112 ("Pl. Opp'n"), 113 ("Def. Opp'n").

## II.    Applicable Legal Standards

### A.    Motions *in Limine*

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257–58 (S.D.N.Y. 2015) (citation omitted). Courts should not exclude evidence on a motion *in limine* unless it is "clearly inadmissible on all potential grounds." *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (citation omitted). A court's ruling on such a motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer." *Luce v. United States*, 469 U.S. 38, 41 (1984).

### B.    Rules 401 and 402

The "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (citation omitted); *see United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008) (relevance threshold "very low"). Under Rule 401, "[e]vidence is relevant when 'it has any tendency to make a [material] fact more or less probable than it would be without the evidence.'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 401). "A material fact is one that would

4

'affect the outcome of the suit under the governing law.'" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Under Rule 402, "unless an exception applies, all '[r]elevant evidence is admissible.'" *White*, 692 F.3d at 246 (quoting Fed. R. Evid. 402). Irrelevant evidence is inadmissible. *See* Fed. R. Evid. 402.

### C. Rule 403

Under Rule 403, the Court may exclude relevant evidence where its probative value is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Gupta*, 747 F.3d 111, 131 (2d Cir. 2014) (quoting Fed. R. Evid. 403); *Gerber v. Comput. Assocs. Int'l, Inc.*, 303 F.3d 126, 13 (2d Cir. 2002). Evidence is prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (quoting *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995)).

Furthermore, "[d]istrict courts analyzing evidence under Rule 403 should consider whether a limiting instruction will reduce the unduly prejudicial effect of the evidence so that it may be admitted." *United States v. Ferguson*, 246 F.R.D. 107, 117 (D. Conn. 2007); *see United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions."). "As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

### D.     Rule 408

Rule 408 furthers "the policy of promoting compromises." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 294 (2d Cir. 1999).  It states that attempted offers to settle a claim, or "conduct or a statement made during compromise negotiations about the claim" are not admissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a)(1), (2).  Such evidence, however, is permissible "for another purpose, such as proving a witness's bias or prejudice, [or] negating a contention of undue delay . . . ."  Fed. R. Evid. 408(b).

Although Rule 408 is not "a blanket rule of inadmissibility, its obvious purpose is to facilitate open and wide-ranging settlement discussions." *Hart*, 90 F. Supp. 3d at 284 (citation omitted).  To advance that goal, the Rule typically requires exclusion of settlement offers.  *See, e.g.*, *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989) ("Rule 408 bars the admission of most evidence of offers of compromise and settlement.").  Although Rule 408 applies to settlement offers made before the initiation of litigation, *see, e.g.*, *id.*, pre-litigation "business communications" remain admissible, *see IBM Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128 (PAC), 2013 WL 1775437, at *9 (S.D.N.Y. Apr. 25, 2013).  "Both the timing of the offer and the existence of a disputed claim are relevant to" distinguishing between the two.  *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992).

### III.    Discussion

#### A.     Benzinger's Motion *in Limine*

Benzinger seeks to preclude the testimony of two of Lukoil's proposed witnesses, both on the ground that Lukoil did not include them in its original Rule 26 disclosures: (1) Thomas Rodilosso, her former supervisor at Lukoil; and (2) Clara Walker, Columbia's chief of staff and Benzinger's current supervisor.  *See* Pl. Mem. at 3.

6

The Court denies Benzinger's motion as to Walker. Lukoil's sole reason for calling Walker was to authenticate certain documents related to Benzinger's application to work at Columbia, to which Benzinger had objected on authenticity grounds. *See* Def. Opp'n at 5–6. Lukoil stated that, should the Court grant its motion to admit those documents over Benzinger's authenticity objections, Walker's testimony would be unnecessary. *Id.* at 6. Benzinger has now withdrawn her objections to those documents, *see* Pl. Opp'n at 15 n.2, and, as discussed below, the Court grants Lukoil's motion to admit them. The Court thus understands that Lukoil no longer intends to call Walker as a witness and denies as moot Benzinger's motion to preclude Lukoil from doing so.

As to Rodilosso, the question is close. Rule 26 requires parties to disclose "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). "If party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004).

"The imposition of sanctions under Rule 37 lies within the broad discretion of the trial court." *Beata Music LLC v. Danelli*, No. 18 Civ. 6354 (JGK), 2021 WL 195708, at *4 (S.D.N.Y. Jan. 20, 2021) (citing *Minotti v. Lensink*, 895 F.2d 100, 102–03 (2d Cir. 1990)). In exercising that discretion, courts in this Circuit generally consider four factors:

> (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)). In all cases, however, "[p]reclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." *Daudier v. E & S Med. Staffing, Inc.*, No. 12 Civ. 206 (PAE), 2013 WL 4407072, at *8 (S.D.N.Y. Aug. 15, 2013) (quoting *Ebewo*, 309 F. Supp. 3d at 607); *see* Fed. R. Civ. P. 37(c)(1)(A) (authorizing, as an alternative sanction, ordering payment of "reasonable expenses").

Lukoil concedes that it neglected to disclose Rodilosso in its Rule 26 materials. And although it blames that omission on prior counsel, successor counsel remained responsible for ensuring the accuracy of Lukoil's disclosures and, if they lacked access to such disclosures, diligently obtaining and, as warranted, seeking to update them. The failure to disclose Rodilosso as a potential witness, therefore, falls largely on Lukoil and its current counsel. That said, Lukoil's conduct does not bear any indicia of bad faith, sandbagging, or gamesmanship—the concerns with which Rule 37(c)(1) is principally concerned.

Lukoil also concedes that the testimony of Rodilosso—who supervised Benzinger for the first year of her employment at Lukoil—"is important." Def. Opp'n at 4. That fact, however, points in two directions. On one hand, Rodilosso's centrality amplifies the prejudice caused by his post-discovery designation as a trial witness. On the other hand, the lack of testimony from Rodilosso, as Benzinger's supervisor between April 2013 and July 2014, would risk leaving a substantial hole in both parties' presentation of this case, and impair the central truth-seeking purpose of a trial. Indeed, Benzinger has known of Rodilosso's significance since the outset of this case, identifying him as a potential witness in her own discovery responses and discussing him extensively at her deposition. *See* Def. Opp'n at 1–2; *id.*, Ex. A; *id.*, Ex. B at 7. This counsels against the unqualified preclusion of his testimony.

8

Based on the current discovery record, Benzinger would be prejudiced by permitting Rodilosso to testify at trial, inasmuch as Benzinger presumably elected not to depose Rodilosso based on Lukoil's indication that *it* would not call him to support its case. But that prejudice—the only specific prejudice Benzinger identifies—can easily be remedied by permitting her to take his deposition now. *See, e.g.*, *NIC Holding Corp. v. Lukoil Pan Ams., LLC*, No. 05 Civ. 9372 (LAK) (FM), 2007 WL 1467424, at *5 (S.D.N.Y. May 16, 2007). The schedule permits the reopening of discovery for that limited purpose. A trial date has not been set, and as a result of delays occasioned by the COVID-19 pandemic, this case could not be tried before a jury in this District until, at the very earliest, the third quarter of this year. As a result, reopening discovery for this limited purpose would not compromise an extant trial date (there is none) or delay trial. *Patterson*, 440 F.3d at 117 (instructing courts to consider the "possibility of a continuance"). With the schedule affording this latitude, it is far preferable to cure any potential prejudice resulting from Rodilosso's late disclosure by authorizing his deposition, rather than precluding his potentially important testimony on account of Lukoil's lapse.

Accordingly, the Court will permit Rodilosso to testify at trial on the condition that Benzinger now be given the opportunity to take his pretrial deposition.[2] The Court accordingly reopens discovery, solely to enable Benzinger depose Rodilosso as relevant to her surviving claims. The deposition may not be used as justification to amend, restore, or add claims. The Court gives Benzinger six weeks from the date of this decision, until March 22, 2021, to conduct that deposition, and expects Lukoil to cooperate fully in its scheduling. The Court further directs

---

[2] Should Benzinger decline that opportunity, Lukoil may of course still call Rodilosso at trial.

that, by March 29, 2021, the parties submit a revised joint pretrial order, solely to add references to testimony or exhibits that will now be offered at trial, in light of Rodilosso's deposition.[3]

Given Lukoil's lapse in identifying Rodilosso as a potential witness until late in this litigation, the Court orders that Lukoil bear half of the out-of-pocket costs occasioned by the deposition (*e.g.*, stenographic or videographic costs).

Subject to those conditions, the Court denies Benzinger's motion *in limine* to preclude Rodilosso's trial testimony.

### B.  Lukoil's Motion *in Limine*

####  a.  *Dismissed Claims and Parties*

#####  i.  NYSHRL and NYCHRL Claims

Lukoil first asks the Court to preclude, as irrelevant and likely to cause confusion, any evidence related to Benzinger's dismissed claims of national-origin discrimination or retaliation under the NYSHRL and NYCHRL. Def. Mem. at 1–2. Benzinger agrees that evidence about her "claim that she was treated less well than her Russian counterparts should be precluded," and disclaims any intent to offer such evidence at trial. Pl. Opp'n at 6. But she opposes Lukoil's motion for a blanket preclusion of all evidence related to her dismissed claims because some such evidence may relate both to her dismissed claims of national-origin retaliation and her live claims of FLSA and NYLL retaliation. *Id.* She also suggests that evidence of national-origin retaliation under the NYSHRL and NYCHRL, even if it did not support a *prima facie* case under those laws, may still be considered "in the aggregate" to support liability under the FLSA and NYLL. *Id.*

---

[3] The parties may also, in the revised joint pretrial order, remove the objections and exhibits that have either been withdrawn by the parties in their *in limine* filings or resolved by this decision.

The Court grants Lukoil's motion. The Court has held that the record lacks any evidence that Benzinger was treated worse on account of her national origin, that she engaged in any protected activity related to her national origin, or that Lukoil took any adverse actions causally connected to her national origin, even under the NYCHRL's "more liberal standard." *Benzinger*, 447 F. Supp. 3d at 118–29. Those claims are thus irrelevant to the upcoming trial, and Benzinger cannot bootstrap them to her surviving claims under the FLSA and NYLL.

Benzinger's counterarguments fail. Her statement that "one type of discrimination exacerbated the other type," Pl. Opp'n at 6, does not gain any traction, as her surviving claims do not involve discrimination. To the extent she suggests that national-origin *retaliation* could have exacerbated retaliation on other grounds, that observation is also inapt. The Court has held that no reasonable jury could find that Lukoil was aware of any protected activity related to Benzinger's national origin. *See Benzinger*, 447 F. Supp. 3d at 123–28. Thus, the record does not permit a finding of retaliation on that basis, let alone that such could have contributed to any other type of retaliation.

Furthermore, reference before the jury to Benzinger's dismissed claims would risk causing substantial confusion as to the issues to be tried, as none of these implicate Benzinger's national origin. Accordingly, under Rules 402 and 403, the Court will preclude evidence, offered by either party, referring to Benzinger's legally baseless claims of national-origin discrimination and retaliation. To the extent that Benzinger believes certain employment actions arose from both a desire to retaliate on the basis of national origin *and* for complaining about her misclassification under the FLSA and NYLL, evidence of such acts remains admissible, but solely to establish the latter.

11

ii.     Litasco, S.A.

Lukoil next seeks the preclusion of any reference to Litasco, Lukoil's dismissed parent corporation, and PJSC Lukoil Company ("PJSC"), a Russian parent to both Litasco and Lukoil. Def. Mem. at 2–3.  Benzinger agrees that PJSC is irrelevant, and the Court grants Lukoil's motion to preclude references to it.  Pl. Opp'n at 7–8.

As to Litasco, Benzinger has testified that, in connection with at least some of her work, she reported to and was supervised by Litasco employees.  *See Benzinger*, 447 F. Supp. 3d at 115. She also proffers that Litasco employees were involved in her complaints and the investigation thereof.  Pl. Opp'n at 7.  Litasco's existence, even after its dismissal as a defendant, could therefore be factually relevant, to a degree, to the surviving claims.  And neutral references to Litasco as, for example, the employer of a particular witness, would not, without more, carry a risk of confusion or unfair prejudice to Lukoil, let alone one sufficient to substantially outweigh such probative value.  There is nothing inherently inflammatory or prejudicial about Litasco, a corporation that lacks a significant public profile.  And Lukoil does not identify any stigmatic or harmful facts about Litasco that might cause Lukoil to be prejudiced by its association with Litasco.  A jury can reasonably be expected to understand that Lukoil, like many modern corporations, has a parent corporation.  And, if warranted, the Court can give a limiting instruction that the parent's liability is not at issue and that the jury is not to concern itself with Litasco's potential liability.  Accordingly, the Court denies Lukoil's motion to preclude all evidence regarding Litasco.

b.     *Settlement Offer and Underlying Spreadsheets*

Lukoil also seeks the preclusion, under Rule 408, of several documents related to settlement negotiations between it and Benzinger.

First, it seeks to preclude an email chain between Benzinger and Lukoil employees discussing a proposed settlement agreement as well as that proposed agreement itself (Plaintiff Exhibits 8–9). Def. Mem. at 3–4. Benzinger does not oppose that portion of Lukoil's motion, Pl. Opp'n at 8, and the Court grants it.

Second, Lukoil argues that certain underlying spreadsheets used to calculate a possible settlement amount (Plaintiff Exhibits 5–7) are similarly inadmissible under Rule 408's bar on compromise offers and communications. Benzinger opposes that aspect of Lukoil's motion, arguing that the spreadsheets are not themselves offers, agreements, or communications, and that Lukoil prepared them before either party contemplated litigation. Pl. Opp'n at 8–10.

The spreadsheets are inadmissible under Rule 408. The timing and context surrounding them makes clear that Lukoil prepared and sent them to Benzinger in an attempt to settle a disputed legal claim: Benzinger's entitlement to overtime wages under the FLSA and NYLL. On January 20, 2015, Benzinger tendered her resignation to Fenner and stated that "she had been misclassified under FLSA and that we owed her money." Collyer Decl., Ex. E ("Fenner Tr.") at 74–75. At his deposition, Fenner testified that he then prepared the spreadsheets "to make [] good faith estimates of some [of] the basis for a settlement for [Benzinger]." *Id.* at 76. And in a February 3, 2015 email in which Fenner sent the actual proposed settlement agreement to Benzinger (copying Lukoil's chief legal officer), he wrote: "Please find attached a proposed draft Settlement Agreement between Lukoil Pan Americas, LLC (LPA) and you *that reflects the numbers I proposed to you in the attached spreadsheet I e-mailed to you last Wednesday*." Collyer Decl., Ex. B at 4 (emphasis added). Benzinger responded that she was "seeking appropriate coun[sel]" and needed more time to consider the offer. *Id.* at 5.

Although these spreadsheets were prepared well before litigation commenced, Lukoil clearly prepared and conveyed them to Benzinger after a "disputed claim" had arisen between her and Lukoil. *See IBM Corp.*, 2013 WL 1775437, at *9 ("Rule 408 extends to offers made before the initiation of litigation[.]"). At that time, Benzinger had already resigned. And in doing so, she specifically cited the FLSA and alleged that Lukoil "owed her money." Fenner Tr. at 74–75. The "propos[al]" in one of those spreadsheets—which, less than a week later, would be incorporated into a formal settlement agreement (the exclusion of which Benzinger does not oppose)[4]—came on the heels of her demand to Fenner. Even absent a direct threat of litigation, there was by then a "disputed claim" that the parties were seeking to compromise, and these documents, bearing on potential settlement terms, were not mere "business communications" unprotected by Rule 408. *Pierce*, 555 F.2d at 827; *see Trebor Sportswear*, 865 F.2d at 510 (affirming exclusion of negotiations under Rule 408 where documents "were intended (at least in part) to settle the claims" at issue). Admission of the spreadsheets would thus undermine "the public policy of encouraging settlements and avoiding wasteful litigation," which Rule 408 furthers by barring "the admission of most evidence of offers of compromise and settlement" to prove the validity or amount of a claim. *Trebor Sportswear*, 865 F.2d at 510.

In any event, the spreadsheets are independently inadmissible under Rule 403, as they would cause confusion and unfair prejudice that would vastly outweigh the spreadsheets' limited (if any) probative value. Benzinger states that the spreadsheets are relevant to her "alleged damages" and to the fact that Lukoil undertook an "investigation into Plaintiff's complaint."

---

[4] The excluded draft agreement itself is a quintessential settlement agreement. As drafted, Lukoil would have denied any liability and agreed to pay Benzinger an identified sum, and Benzinger would have agreed to waive and release all claims against Lukoil, including under the NYLL specifically, and for any "wages" more broadly. Collyer Decl., Ex. B.

Pl. Mem. at 10. But Fenner testified that the numbers in those spreadsheets were not based on any approximation of Benzinger's actual hours worked. Rather, they were created to help guide Lukoil in a potential negotiated settlement with Benzinger, and reflected only "an estimate of the likely possible overtime anyone could have worked during those dates, if they had been a[] nonexempt employee," and that such estimates were "purely hypothetical." Fenner Tr. at 76. They are thus of little, if any, relevance to Benzinger's actual damages. And Benzinger has not explained how these hypothetical estimates are germane to any other aspect of the case. Yet if the Court admitted them at trial, they would carry a serious risk of confusing the jury as to their relevance, and/or misleading the jury to conclude that Lukoil's managing director had determined that Lukoil was liable and owed such amounts—or any amount—to Benzinger under the FLSA or NYLL. Because these risks far outweigh any relevance these spreadsheets might have to Benzinger's remaining claims, the Court grants Lukoil's motion and excludes Plaintiff Exhibits 5–9 under Rules 403 and 408.

### c. *Lost Wages and Punitive Damages*

Lukoil next argues that Benzinger should be precluded from seeking lost wages or punitive damages at trial because there is insufficient evidence to support either form of recovery. As to the former, it argues that Benzinger's voluntary departure from Lukoil precludes any finding that such lost wages (*i.e.*, amounts not earned between her employment with Lukoil and Columbia) resulted from retaliation. It further argues that Benzinger failed to mitigate those damages by failing to stay on at Lukoil until her job at Columbia started. Def. Mem. at 5–8. As to punitive damages, it argues that Benzinger cannot meet her burden of establishing that Lukoil acted "with malice or with reckless indifference" to her rights under the FLSA or NYLL. *Id.* at 8 (quoting *Azkour v. Little Rest Twelve*, No. 10 Civ. 4132 (RJS), 2015 WL 631377, at *9 (S.D.N.Y. Feb. 12, 2015)). Benzinger responds that there is sufficient evidence to support

15

findings of lost wages and punitive damages, such that both questions should go to the jury. Pl. Mem. at 10–14.

As to lost wages, whether these are available—even absent a constructive discharge—requires a case-by-case analysis of the circumstances of the employee's departure, including whether "it would be unreasonable to expect a plaintiff to mitigate damages by continuing to work for her employer." *EEOC v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 342 (S.D.N.Y. 2014); *see id.* at 341 (rejecting a rule "categorically barring post-resignation backpay in the absence of a constructive discharge" and instead relying on the requirement that a plaintiff mitigate her damages). The defendant generally "bears the burden of demonstrating that a plaintiff has failed to satisfy the duty to mitigate." *Broadnax v. City of New Haven*, 415 F.3d 265, 268 (2d Cir. 2005). As to punitive damages, Benzinger bears the burden of establishing her entitlement to punitive damages at trial, which turns on a fact-specific inquiry into whether Lukoil has retaliated "with malice or with reckless indifference to" Benzinger's rights under the FLSA. *Azkour*, 2015 WL 631377, at *9. That standard "depend[s] on Defendant's knowledge (or reckless indifference)" as to whether "it may be acting in violation of federal law." *Id.* (quoting *Farias v. Instructional Sys. Inc.*, 259 F.3d 91, 102 (2d Cir. 2001)). Thus, to obtain punitive damages, Benzinger must "present evidence that [Lukoil] . . . retaliated . . . against [her] with conscious knowledge it was *violating the law*, or that it engaged in egregious or outrageous conduct from which an inference of malice or reckless indifference could be drawn." *Id.* (quoting *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 573 (2d Cir.2011) (emphasis in *Azkour*)); *see, e.g.*, *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845 (PAE) (GWG), 2016 WL 4523855, at *1 (S.D.N.Y. Aug. 29, 2016) (awarding $10,000 in punitive damages where employer failed to pay plaintiff for six months and pointed a gun at plaintiff and told him "I'll pay you when I feel like it").

Whether Benzinger can satisfy these standards would turn on close examination of the state of mind of the relevant players at Lukoil, as well as Benzinger's working conditions after her complaints. The limited materials submitted in connection with the pending motions *in limine*, however, do not permit the Court to resolve these fact-intensive inquiries as to the availability of these two species of damages. As the cases the parties cite reflect, such issues commonly—and, in the Court's view, more properly—arise before trial on motions for summary judgment, *see, e.g.*, *Bloomberg*, 29 F. Supp. 3d at 341–42, and/or after trial, based on a full trial record, *see, e.g.*, *Azkour*, 2015 WL 631377, at *9. To be sure, from the limited materials under review, the evidence supporting Benzinger's claims to both lost wages and punitive damages appears to be marginal, at best. It is not clear that the few allegedly retaliatory acts she identifies made it "unreasonable to expect [her] to mitigate damages by continuing to work for" Lukoil. *Bloomberg*, 29 F. Supp. 3d at 342. And the Court is, as yet, unaware of any evidence of malice or reckless indifference that could support a punitive-damages award, especially given Fenner's offer (declined by Benzinger) to look further into her misclassification claims after she had complained about her alleged misclassification. But absent focused briefing on these questions, the Court is ill-equipped to reliably rule on them now.

To enable full and fair consideration of these questions, the Court accordingly sets the following expedited schedule, which will permit resolution well in advance of any trial date. Benzinger is to confirm, in a letter filed on the docket of this case by February 22, 2021, whether she intends to pursue at trial lost wages and/or punitive damages. To the extent she so intends, the Court authorizes Lukoil to file a supplemental motion for summary judgment by March 15, 2021, not to exceed 10 pages, explaining why such damages are unavailable in light of the full

17

evidentiary record. If Lukoil so moves, Benzinger shall respond by March 29, 2021, also in a brief not to exceed 10 pages. The Court does not authorize any reply.

The Court therefore denies Lukoil's motion *in limine* as it relates to these subjects, preferring that these be resolved pursuant to a partial summary judgment motion.

### d. Testimony of Irina Akinshina

Lukoil seeks to preclude testimony from Irina Akinshina, Litasco's head of human resources, who lives and works in Geneva, Switzerland. It argues that, because she is a non-party who works for now-non-party Litasco, her testimony would confuse the jury and prejudice Lukoil. It also notes that Akinshina resides outside the geographic reach of the Court's subpoena power. Def. Mem. at 8–9.

The Court denies this motion. Benzinger has testified that, at times, she reported to and was supervised by Akinshina. *See Benzinger*, 447 F. Supp. 3d at 115. Akinshina's testimony, insofar as it relates to Benzinger's role and work while employed by Lukoil, is thus relevant.[5] And Lukoil has not proffered any concrete reason to regard such testimony as confusing or unfairly prejudicial. That Akinshina works for Lukoil's parent is not, consistent with the Court's ruling above, inherently prejudicial. And Lukoil does not cite any authority for the proposition that a witness's residence outside the Court's subpoena power justifies precluding such a witness from voluntarily appearing to testify. Accordingly, the Court will permit her testimony on the points described in this decision.

---

[5] At summary judgment, Benzinger also cited evidence about Akinshina in arguing that Lukoil favored Benzinger's Russian counterparts. *See Benzinger*, 447 F. Supp. 3d at 113–14. In light of the Court's summary judgment decision, Akinshina's testimony about that subject would clearly be irrelevant at trial. Accordingly, while the Court denies Lukoil's motion to exclude Akinshina altogether as a trial witness, her testimony at trial will be limited to her work with Benzinger, the terms of Benzinger's employment, Benzinger's duties and responsibilities at Lukoil, and similar topics.

e.     *Testimony of Clara Ohr*

Lukoil also seeks to preclude testimony from Clara Ohr, its former chief legal counsel, as irrelevant and unfairly prejudicial. Def. Mem. at 8–10. Benzinger does not oppose that portion of Lukoil's motion. Pl. Mem. at 14 ("Plaintiff opposes the preclusion of Akinshina only."). The Court grants Lukoil's request to preclude Ohr's testimony.

f.     *Documents Relating to Benzinger's Job Search*

Last, Lukoil asks the Court to overrule Benzinger's objections to certain documents associated with her job search with Columbia and hold that they are relevant, not hearsay, and authentic. Def. Mem. at 10–12 (discussing Defense Exhibits B, C, D, H, and I). Benzinger, however, has "remove[d] her objections" to those exhibits and did not otherwise respond to Lukoil's arguments about them. Pl. Opp'n at 15 n.4 (withdrawing objections to defense exhibits B, C, D, G, H, and I). Accordingly, the Court grants Lukoil's motion as to these documents.

**C.     Modification of Case Caption**

Lukoil also moves, based on the dismissal of Litasco and based on Benzinger's decision not to pursue this action on a class or collective basis, to amend the case caption to delete Litasco and any references to this being a putative class or collective action. Benzinger assents to that request. The request is granted, as reflected in the caption above.

**CONCLUSION**

For the foregoing reasons, the Court denies Benzinger's motion in *limine* and grants in part and denies in part Lukoil's motion in *limine*.

The Court authorizes the deposition of Thomas Rodilosso, solely related to Benzinger's surviving claims, by March 22, 2021. A revised proposed joint pretrial order, amended to conform to this decision and to accommodate testimony or exhibits received at the Rodilosso deposition, must be filed by March 29, 2021.

19

The Court also directs Benzinger to file a letter by February 22, 2021 indicating whether she intends to pursue claims for punitive damages or lost wages at trial.  If she does, the Court authorizes Lukoil to file a supplemental brief by March 15, 2021, not to exceed 10 pages, in support of the entry of summary judgment as against Benzinger's claims for such relief.  Benzinger's response, also not to exceed 10 pages, is due by March 29, 2021.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 99 and 102.  The Clerk of Court is further respectfully directed to amend the caption of this case to reflect the caption above.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: February 8, 2021
      New York, New York